UNITED STATES of America, Plaintiff,

v.

**Roger RESEK, Defendant.**

**84 Cr. 841 (JFK).**

United States District Court,
S.D. New York.

Feb. 1, 1985.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y. by Baruch Weiss, Asst. U.S. Atty., New York City, for plaintiff.

Frank Freeman, Miami, Fla., Lawrence A. Omansky, New York City, for defendant.

## OPINION AND ORDER

KEENAN, District Judge:

This motion involves the newly enacted Bail Reform Act of 1984, part of the Com-

prehensive Crime Control Act, 18 U.S.C. §§ 3141–3151 ("Act"), which was signed into law on October 12, 1984. The government seeks a detention order, pursuant to 18 U.S.C. § 3142(e) of the new Act. In order to issue a detention order, the Court must hold a detention hearing in accordance with § 3142(f). The issue in this case is whether the government can obtain a detention hearing long after the defendant's first appearance before a judicial officer and without representing to the Court that there exists dramatically new information or changed circumstances bearing on defendant's likelihood of flight.

Oral argument on this motion was held January 29 and 30, 1985. There was no briefing of the issue, though short affidavits were filed by both parties.

## BACKGROUND

Defendant was arrested, along with four co-defendants, on October 25, 1984. He was arraigned the following day before Magistrate Washington who set bail at $100,000 personal recognizance bond backed by $10,000 cash or surety. On the government's motion, Magistrate Gershon increased defendant's bail to $1 million backed by $100,000 cash or surety. Later that day, October 30, 1984, Judge Ward affirmed Magistrate Gershon's determination. The bail condition was later modified, without objection by the government, to allow defendant to post property for bail purposes.

On November 5, 1984, defendant was indicted on two counts. Count one alleges a conspiracy, under 18 U.S.C. § 371, to commit a theft from a bank, 18 U.S.C. § 2113(b), and interstate transportation of stolen money and securities, 18 U.S.C. § 2314. Count two alleges a violation of 18 U.S.C. § 2113(b), which prohibits various forms of bank theft. These counts carry maximum penalties of five and ten years incarceration, respectively. The acts forming the basis of the indictment allegedly

occurred between October 18 and October 25, 1984. The government alleges that defendant negotiated a check for $50,000, payable to Chase Manhattan Bank, which had been received as proceeds of a counterfeit check.

## DISCUSSION

Apparently to the government's surprise, the defendant is now prepared to meet the terms of his bail. The government has stated to the Court that it will not request a *Nebbia* hearing.

Nonetheless, the government seeks an order, pursuant to 18 U.S.C. § 3142(e) of the new Act, detaining defendant prior to trial without the opportunity for release on bail. Subsection (e) states that such an order may be issued only after the Court holds a detention hearing, described in subsection (f) of § 3142, to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of other persons in the community.

Section 3142(f) detention hearings fall into two basic categories. Section 3142(f)(1) provides for hearings, upon motion of the government, under four precisely defined circumstances: (1) a crime of violence; (2) an offense for which the maximum sentence is life imprisonment; (3) a drug-related offense for which a term of ten years or more imprisonment is prescribed; or (4) any felony committed after the defendant had been convicted of two or more of the offenses described above, whether those offenses were under state or federal law. In this case, the government's indictment of defendant fails to allege an offense justifying a detention hearing under § 3142(f)(1).

Under § 3142(f)(2), a detention hearing is authorized, upon motion of the government or the court, in two situations: (1) where there is a serious risk the defendant will flee, or [1] (2) a serious risk that the

---

1. The law provides neither an "and" nor an "or" between these considerations. Since the other part of subsection (f) uses "or", one might con-

clude—as a matter of pure statutory construction—that the conjunctive "and" should be implied. But Congress knew the word "and", hav-

defendant will obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror. The government bases its request for detention on the likelihood defendant will flee. (Affidavit of Baruch Weiss, Assistant United States Attorney, ¶ 4 (hereinafter "Weiss Aff.")).

The critical part of subsection (f), for purposes of this motion, provides: "The hearing shall be held immediately upon the person's first appearance before the judicial officer ..." The requirement that the hearing be held at the defendant's first appearance before a judicial officer is grounded on due process considerations. *Comprehensive Crime Control Report, supra*, at 21–22. In this regard, the Senate Judiciary Committee stated that "the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial." *Id.* at 20.

Defendant first appeared before a judicial officer on October 25, 1984. Several appearances and 94 days later, on January 29, the government formally sought a detention hearing. Thus, the government's request fails to come within those requests allowable under the express language of subsection (f).

█ In response, the government relies on § 3142(c), which authorizes a judicial officer "to at any time amend his order to impose additional or different conditions of release." Taken at face value, this provision of subsection (c) appears to contradict the "first appearance" requirement of subsection (f). After all, why would Congress require the government to apply for a detention order at the defendant's first appearance before a judicial officer, yet authorize a judicial officer to order detention at any later appearance based on information that was available to the government at the start of the case?

One possible answer is that in allowing a judicial officer to amend his order at any time to "impose additional or different conditions of release," Congress did not contemplate the imposition of a detention order. Although § 3142(c) does not specifically authorize such an order, it is clear nonetheless that Congress did intend to allow such orders under this section. If a court, based on new information it received from the government, determined that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(e), detention would be appropriate. If an order of detention is the only means of securing the appearance of a defendant or protecting the community, then a detention order under § 3142(c) is contemplated by Congress. *United States v. Payden*, 598 F.Supp. 1388, at 1393 n. 5 (S.D.N.Y.1984); Comprehensive Crime Control Report, *supra*, at 16. Indeed, the entire thrust of the Bail Reform Act is toward increased use of detention to assure the defendant's appearance and to protect the community. *See* Comprehensive Crime Control Report, *supra*, at 33. To deprive the government of the opportunity to seek detention based on information obtained after defendant's first appearance before a

---

ing used it throughout the Act, including subsection (e). Thus, it is just as plausible to read it disjunctively as conjunctively. More important, common sense compels the conclusion that Congress would not allow the release of a defendant who, for example, threatened witnesses, but was not likely to flee. Reading an "and" into subsection (f)(2) would compel such an absurd result. This common sense interpretation is consistent with the legislative history. The Senate Judiciary Committee recognized that dangerous persons are often not those who are likely to flee. Senate Comm. on the Judiciary, The Bail Reform Act of 1983, S.Rep. No. 147, 98th Cong., 1st Sess. 23 (1983) [hereinafter cited as Bail Reform Report]. Thus, this section would have little value in promoting the pretrial detention of persons if they had to be proven both dangerous and likely to flee. Additionally, another Senate Judiciary Committee Report states that pretrial detention is permissible in cases that "involve either a serious risk that the defendant will flee, *or* a serious risk that the defendant will obstruct justice, or threaten ..." Senate Comm. on the Judiciary Comprehensive Crime Control Act of 1983, S.Rep. No. 225, 98th Cong., 1st Sess. 21 (1983) (emphasis added) [hereinafter cited as Comprehensive Crime Control Report].

judicial officer would run afoul of the policies of the new Act.[2] *Payden*, at 1393 n. 5. It is clear, therefore, that Congress intended to allow the government to seek a detention order under § 3142(c). Thus, the apparent contradiction between subsections (f) and (c) cannot be harmonized by disallowing detention orders under § 3142(c).

The language of subsections (f) and (c) can be harmonized by recognizing that the authorization to amend a release order in § 3142(c) is "based on the possibility that a changed situation or new information may warrant altered release conditions." Comprehensive Crime Control Report, *supra*, at 16. Thus, the government's contention that the information already on the record justifies a detention order, pursuant to § 3142(c), is inconsistent with a fair reading of the statute.

■ It could be argued that there is a changed situation in this case—to wit, the defendant can now meet the terms of his bail. This, however, is surely not the type of changed situation contemplated by Congress in enacting § 3142(c). Indeed, this very subsection unequivocally states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." This subsection, to the extent it precludes the use of high bail as a means of confinement, is a significant departure from past practice. *See* Bail Reform Report, *supra*, at 20–21. To permit the government to use a high bail term in lieu of a detention order, which is what was effectively done in this case, is therefore inconsistent with the new law.

■ The government argues alternatively that it has newly-acquired information that provides a sufficient basis for a detention hearing under § 3142(c). This information allegedly concerns various check schemes involving the defendant. The sums of money involved in these schemes allegedly suggest that defendant will be prepared to forfeit bond "as a 'cost of doing business.' " (Weiss Aff. ¶ 7, citing Comprehensive Crime Control Report, *supra*, at 24). The Assistant United States Attorney says that he acquired this information on January 16 or 17, 1985 and, at the next conference on this case, indicated that he might want a detention hearing. (Weiss Aff. ¶ 8). The Court finds the government's action in this respect insufficient to warrant a detention hearing for two reasons.

First, to meet the "new information" or "changed circumstances" requirement of § 3142(c), the government must bring these new facts to the Court's attention when the information is still new or the circumstances have recently changed. If the government fails to disclose new information or a recent change of circumstances, it loses the opportunity to use the information as a basis for a detention order. Such an interpretation is a necessary analogue to § 3142(f)'s "first appearance" requirement and the due process considerations upon which it is grounded.

The government's information in this case was not new. Although the Assistant currently handling this case did not hear about the information until January 16 or 17, 1985 (Weiss Aff. ¶ 8), his predecessor was aware of the information in December, 1984 (Weiss Aff. ¶ 9). The internal operations of the United States Attorney's Office are not a justification for the government's delay in revealing its new information. Thus, the fact that the government changed prosecutors can certainly not be held against the defendant.

■ The Court's second reason for denying a detention hearing pursuant to subsection (c) is that the government represented at oral argument that its "new information" is primarily cumulative, to the extent it is the product of an ongoing government investigation. Criminal investigations are always ongoing. If such cumulative evi-

---

**2.** Of course, the "first appearance" requirement of subsection (f) would still be given effect to the extent it would require the government to present newly-acquired evidence to the Court during the defendant's first appearance before the Court after the evidence or information was obtained.

dence could be marshalled at any time for a detention hearing, the requirement of "new information" or "changed circumstances," and the due process considerations they reflect, would effectively be deleted from the statute and its legislative history. To obtain a detention hearing, pursuant to subsection (c), the government must represent that it is prepared to come forward with more than merely new cumulative evidence. The government must be prepared to present dramatic new information to the Court to come within § 3142(c).

In support of its position, the government relies on *Payden*. *Payden*, however, is distinguishable. In *Payden*, Judge Edelstein permitted a detention hearing because of the existence of new information. At 1393. Although the government had information relating to the defendant's danger to the community at the start of the case, it was not a permissible consideration for the court under the prevailing law on August 3, 1984, when Payden first appeared before a judicial officer. At 1393–1394. It was a permissible consideration, however, on October 31, 1984 when the government moved to detain Payden under the new Act. *See id.* at 1390–1391. Thus, it constituted new information for the court.

In the instant case, defendant's first appearance was October 26, 1984, shortly after most judges and lawyers had received copies of the new Act that had become effective two weeks earlier.[3] If the government wished to detain defendant, it should have done so at this first appearance or at least sought the three day continuance, permitted the government under subsection (f), to further investigate the case.[4] Instead, the government did not seek detention until approximately three months later when the defendant was prepared to make bail.

To allow the government a detention hearing at this late date, absent a contention by the government of a "changed situation" or "new information," other than the fact that defendant can now make bail, would be tantamount to reading the "first appearance" requirement of subsection (f) out of the Act. The Court declines to ignore Congress' language or the due process rights it was designed to protect.[5]

The government makes two other arguments that merit attention. First, the government contends that a strict construction of the "first appearance" requirement would preclude the government from seeking detention orders when it discovered, only after the first appearance, that, for example, a defendant was an escapee or mass murderer. This argument is without merit since these are independent offenses that form a separate basis for arrest and incarceration. In addition, the provision of § 3142(f) allowing the government a continuation of the detention hearing for at least three days is designed to give the government the opportunity to investigate a suspect's record. *See* Comprehensive Crime Control Report, *supra*, at 21–22. Even in the closer case, however, where the government may discover, after the first appearance, that the defendant is likely to flee, yet has committed no prior independent criminal act, the government has recourse in § 3142(c). As discussed above, this section allows the judicial officer to modify a defendant's release conditions if new information or changed circumstances so warrant.

---

3. The United States Attorney's Office seemed to be aware of the "first appearance" requirement of § 3142(f) by this time. *See, e.g., United States v. Chimurenga,* No. 84 Cr. 818, Slip op. at 1–2 (S.D.N.Y. Nov. 5, 1984) (defendants arrested October 17, 1984 and the government moved for detention under § 3142(e) of the new Act at presentment the following day).

4. *See* Comprehensive Crime Control Report, *supra,* at 21–22. Upon a showing of good cause,

the statute permits the government to obtain a continuance beyond three days to prepare for the detention hearing. *Id.*

5. Criminal statutes should be narrowly construed in favor of the defendant. *See Williams v. United States,* 458 U.S. 279, 290, 102 S.Ct. 3088, 3094, 73 L.Ed.2d 767 (1982); *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971).

As long as the government discloses new information or a changed circumstance to the Court immediately upon learning of it, § 3142(c) recourse will be available. The government may not, as it did in this case, conceal the information until such time as defendant is prepared to make bail.

██ Finally, the government pleads for the Court's sympathy in enforcing the new law. The government has represented to the Court that it has sought detention hearings from several judges of this Court only to be told not to bother with a hearing until their defendants attempt to make bail. Obviously, the government can do no more than try to obtain a detention hearing and inform the Court that it has new information or that circumstances have changed such that a detention order is appropriate. Assuming the government also informs the defendant of its position in this regard, there would seem to be no due process problems. In fact, this approach appears to be eminently practical. Courts, defendants and the government could be spared needless detention hearings when defendants do not plan to seek release on bail. Yet, those defendants that do plan to seek release on bail would realize that a detention hearing to consider specified new information or changed circumstances is a prerequisite to their release.

If, as in the instant case, the relevant information was known to the government at the defendant's first appearance before a judicial officer, the government has a choice. It can bring this information to the attention of the court and seek a detention order under § 3142(e) or remain silent and waive its right to seek detention based on this information when the defendant later attempts to make bail.

### CONCLUSION

The government did not make a motion for a detention hearing at defendant's first appearance before a judicial officer under § 3142(f). Nor has the government represented that it has obtained dramatic new information or that it is aware of changed circumstances within the meaning of § 3142(c).

Accordingly, the government's motion for a detention hearing is denied.