**UNITED STATES of America, Plaintiff,**

v.

**Oussanna Robine KOUYOUMDJIAN, Defendant.**

**No. CR 85–34–PAR.**

United States District Court,
C.D. California.

Feb. 7, 1985.

David W. Wiechert, Los Angeles, Cal., for plaintiff.

Michael J. Treman, Santa Barbara, Cal., for defendant.

## MEMORANDUM OF DECISION AND DETENTION ORDER

RYMER, District Judge.

Oussana Kouyoumdjian is charged with possessing with intent to distribute and intentionally importing almost four kilograms of heroin in violation of 21 U.S.C. §§ 952(a) and 960(a)(1). Pursuant to 18 U.S.C. § 3145(b), defendant seeks review of the detention order entered by the magistrate on January 11, 1985.

Magistrates in the Central District use a preprinted detention hearing form. In his Order, the magistrate indicated by a check mark in the appropriate box that he found "(1) There is probable cause to believe that the defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. §§ 952(a) and 960(a)(1)." He did not check, but crossed out by interlineation and initialed part of finding two, as follows: "The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community." The magistrate also concluded that he considered and found, pursuant to section 3142(g), that "defendant is an alien who came into the U.S. for the 1st time w/o prior notice to the family. She says she intended to visit carrying suitcases in which large quantities of heroin were concealed. Little is known of her criminal record, if any, or her background in Lebanon." Following the hearing, the defendant was ordered detained pending trial.

Defendant contends that this court should set conditions for the pretrial release of the defendant on the grounds that (1) the pretrial detention order of the magistrate is not supported by the findings; (2) there are conditions which would reasonably assure the presence of the defendant; and (3) the provisions of the Bail Reform Act of 1984, which permit the "no bail" detention of a defendant, are unconstitutional. Having considered the memoranda of the parties, the record before the magistrate, the Declaration of Michael J. Treman in Support of defendant's motion for bail and the Summary Report prepared by the Pretrial Services office of the United States Probation Department, and having heard argument of counsel, the Court concludes that a detention order is appropriate.

1. *Adequacy of the Magistrate's Findings.*

Defendant raises a difficult issue. She argues that to detain a person under the

Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* ("the Act"), the judicial officer must explicitly find that there are no conditions or combination of conditions that will assure *each* of the Act's objectives, *i.e.,* appearance of the person *and* the safety of the community; and conversely, that a finding that only one objective cannot be so assured, in this case defendant's appearance, does not suffice. Defendant relies primarily on the language of section 3142(e) itself, which states the objectives conjunctively: "If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required *and* the safety of any other person and the community, he shall order the detention of the person prior to trial." [Emphasis added.] By contrast, subsections (b) and (c), providing for release on personal recognizance or on conditions, state the objectives disjunctively, requiring the judicial officer to determine whether the particular form of release will "reasonably assure the appearance of the person as required *or* will endanger the safety of any other person or the community." Read literally, subsections (e) and (f) are conjunctive. However a disjunctive construction is equally logical and is more consistent both with the legislative history and the internal structure of the Act.

### a. *The statutory scheme.*

Established rules of statutory construction require that the Court look to the "language in which the act is framed, and if that is plain, ... to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). When the meaning of that language is disputed, the stated purposes, legislative history and relationship to other statutes are examined in order to determine congressional intent. *State of California v. Watt,* 520 F.Supp. 1359 (C.D. Cal.1981), *aff'd,* 683 F.2d 1253 (9th Cir. 1982), *rev'd,* 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984). Where acceptance of a literal meaning would thwart the obvious purpose of the statute, it should be con-

strued so as to be consonant with the purposes of the act. *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965).

Under the Bail Reform Act of 1984, the judicial officer determining the status of an arrested person is presented with four options. The judicial officer may (1) release the defendant on his own recognizance or upon an unsecured appearance bond, § 3142(b); (2) release the defendant on conditions specified in subsection (c), § 3142(c); (3) temporarily detain the defendant to permit revocation of conditional release, deportation or exclusion, § 3142(d); or (4) detain the defendant, § 3142(e), after a detention hearing pursuant to subsection (f).

Section 3142(f)(1) provides that for certain crimes, including a serious narcotics offense of the sort involved in this case, a hearing shall be held upon motion of the attorney for the Government to determine if any of the conditions set forth in section 3142(c) will reasonably assure the person's appearance and the community's safety. In such a case if the person has a particular criminal history, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure *safety.* § 3142(e). Regardless of the person's record, if there is probable cause to believe that he has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in certain statutes, including the Controlled Substances Act, 21 U.S.C. § 801 et seq., at issue here, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the *appearance* of the person as required *and* the *safety* of the community." § 3142(e) (emphasis added). The statute further provides that when detention is based on safety, the finding pursuant to subsection (e) must be supported by clear and convincing evidence. § 3142(f).

Subsection (f)(2) provides that a hearing be held upon motion of the Government or the judicial officer in a case that involves a serious risk that the person will flee,

§ 3142(f)(2)(A), or that justice will be obstructed, § 3142(f)(2)(B).[1]

Only a disjunctive construction is sensible if these provisions are to be construed consistently. First, section 3142(f) specifically refers the judicial officer to subsection (c). The lead sentence of subsection (c) provides that if the judicial officer determines that release will not assure appearance *or* will endanger safety, he shall order release "subject to the least restrictive condition, or combination of conditions, that he determines will reasonably assure the appearance of the person as required *and* the safety of any other person and the community …" § 3142(c)(2) (emphasis added). Thus, conditional release is appropriate if the judicial officer determines that conditions can be imposed which reasonably guarantee the person's appearance *and* the safety of the community. Put another way, for the defendant to gain conditional release, the judicial officer must be satisfied that *both* the defendant's appearance *and* the community's safety are assured. The converse must also be true: if the judicial officer can conceive of no conditions which will reasonably guarantee either the person's appearance *or* the community's safety, conditional release must be denied.

Second, subsection (f)(2) gives the judicial officer or the Government the option of initiating a detention hearing in a case perceived to involve *only* a serious risk that the person will flee. § 3412(f)(2)(A). It is illogical to have that power without the correlative ability at the hearing to determine that detention is indicated on the sole basis of a finding that no conditions will assure *appearance*. Subsection (f)(2)(B) correspondingly provides for initiating such a hearing in a case that involves a serious risk of obstruction of justice or witness intimidation—a power which would make no sense if, upon hearing, the judicial officer were unable to detain based solely on a finding that no conditions will assure *safety*.

Finally, the burden of proof required to support a finding based on safety is clear and convincing, whereas generally under prior law in which the only consideration was risk of flight, proof by a preponderance of the evidence sufficed. That the latter was unchanged by the Act indicates that appearance and safety are two independent findings, either of which warrants detention if supported by evidence meeting the standard respectively required.

### b. *Legislative History of the Bail Reform Act.*

The legislative history reflects that the accused may be detained if the judicial officer finds the person to be either a flight risk *or* a danger to the community. *See* Report of the Committee on the Judiciary, United States Senate on S. 215, Rept. No. 96–147 (May 25, 1983). The Senate Report notes that prior to the Act, courts could consider only the risk of flight and not the public safety in determining bail. *Id.* at 22. As it states, "[The Bail Reform Act of 1966] adopted the concept that in non-capital cases a person is to be ordered released pretrial under those minimal conditions reasonably required to assure his presence at trial. Danger to the community and the protection of society are not to be considered as release factors under the current law." Report at 31.

One of the purposes of the Bail Reform Act of 1984 was to allow courts to weigh an *additional* factor when considering bail: the danger to the community posed by the release of defendants. However, nothing in the legislative history suggests an intent to do away with the risk of flight as an independent concern or to make danger to the community the sole basis for pretrial detention:

> Section 215 substantially revises the Bail Reform Act of 1966 in order to address such problems as a) the need to consider community safety in setting non financial pretrial conditions of release, b) the need to expand the list of statutory

---

**1.** It is not clear whether the presumption based on potential penalty is applicable on an (f)(2) hearing, but that need not be decided for purposes of this review.

release conditions, c) the need to permit the pretrial detention of defendants as to whom no conditions of release will assure their appearance at trial *or* assure the safety of the community or other persons... Many of the changes in the Bail Reform Act incorporated in this bill reflect the Committee's determination that federal bail laws must address the alarming problem of crimes committed by persons on release and must give the court adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. The adoption of these changes marks a significant departure of the Bail Reform Act, which is that the sole purpose of bail laws must be to assure the appearance of the defendant at judicial proceedings. *Id.* at 1–2 (emphasis added).

That the Act was adopted to provide an independent ground upon which a defendant could be denied bail or detained is further reflected in the deficiencies of the 1966 Act which prompted reform. As the Senate Report notes: "'the [1966] Act has come under criticism as too liberally allowing release and as providing too little flexibility to judges in making appropriate release decisions regarding defendants who pose serious risks of flight *or* danger to the community.'" *Id.* at 32, quoting Final Report of the Attorney General's Task Force on Violent Crime, August 17, 1981, at 51 (emphasis added).

Both generally, and specifically as to the core pretrial detention provisions, risk of flight is carried forward from prior law as one concern, while safety to the community is established as a separate concern. For example, with respect to subsection (b) and the Act as a whole, the Report remarks:

"... unlike current law, in making the determination whether release under this subsection [ (b) ] is appropriate, the judicial officer is to consider not only whether these forms of release are adequate to assure the appearance of the defendant, but also whether they are appropriate in light of any danger the defendant may pose to others. As discussed above, the Committee has determined that danger

to the community is as valid a consideration in the pretrial release decision as is the presently permitted consideration of risk of flight. Thus, subsection (a), *like the other provisions of section 3142, places the consideration of defendant dangerousness on an equal footing with the consideration of appearance."* *Id.* at 39 (emphasis added).

*See also* Senate Report at 16 (example given of procedure contemplated by section 3142(c) indicates that a finding of no available condition that will assure appearance "is the very finding which, under section 3142(e), is the basis for an order of detention"). With respect to subsections (e) and (f) specifically, the Senate Report declares:

Subsections (e) and (f) set forth the findings and procedures that are required for an order of detention. The standard for an order of detention of a defendant prior to trial is contained in subsection (e), which provides that the judicial officer is to order the person detained, if, after a hearing pursuant to subsection (f), he finds that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. The facts on which the finding of dangerousness is based must, under subsection (f), be supported by clear and convincing evidence. Thus, *this subsection not only codifies existing authority to detain persons who are serious flight risks,* but also, as discussed extensively above, creates new authority to deny release to those defendants who are likely to engage in conduct endangering the safety of the community even if released pending trial only under the most stringent conditions listed in ·section 3142(c)(2). *Id.* at 44 (emphasis added).

█ Thus it is reasonable to conclude that Congress intended the 1984 Act separately to encompass risk of flight and safety to the community. To construe the statute as defendant urges by requiring findings on both appearance and safety before detention could be ordered, would defeat the overriding purpose of the Bail Reform legislation.

## 2. Constitutionality of the Bail Reform Act.

■ Defendant asserts that the Eighth Amendment guarantees a right to bail and therefore pretrial detention under section 3142(e) is unconstitutional. Additionally, defendant argues that pretrial detention violates due process guarantees because it imposes punishment without adjudication of guilt. Neither argument is persuasive. The Court instead believes the Bail Reform Act of 1984 to be constitutional, and adopts the reasoning set forth in greater detail in *United States v. Edwards*, 430 A.2d 1321 (D.C.App.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982) and *United States v. Hazzard*, 598 F.Supp. 1442 (N.D.Ill.1984).

Although the Eighth Amendment provides that "excessive bail shall not be required," the Supreme Court has not held that there is an absolute right to bail under all circumstances. *See Carlson v. Landon*, 342 U.S. 524, 545, 72 S.Ct. 525, 537, 96 L.Ed. 547 (1952); *Hazzard; cf. Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951) (*dicta* to the contrary). The Eighth Amendment was adopted "merely to provide that bail shall not be excessive in those cases where it is proper to grant bail," *Carlson*, 342 U.S. at 545–46, 72 S.Ct. at 537; *see also Edwards*, 430 A.2d at 1330; and "fails to say all arrests must be bailable." *Carlson*, 342 U.S. at 546, 72 S.Ct. at 537. The determination whether bail is permissible for any particular offense is a duty of Congress rather than a duty of the courts interpreting the Eighth Amendment. *Id.; Hazzard.* In the 1984 Act, Congress did not state that certain offenses would not be eligible for bail. Instead, the Congress exercised its authority to define under what circumstances conditional release will be available. The Act provides a detailed set of factors and permissible conditions of release that the judicial officer is to consider. Moreover, section 3142 is structured in such a way that bail is to be granted unless certain societal interests, *i.e.* the community's safety and preventing the defendant's flight before his appearance, are implicated. *See* § 3142(b), (c).

The 1984 Act also allows the accused to rebut the presumption which attaches with some offenses and establish that conditional release is appropriate in his case.

■ Nor were defendant's rights to due process infringed. The Fifth Amendment protects against a detainee's punishment prior to an adjudication of guilt in accordance with due process of law. However, the Government may detain a defendant to ensure presence at trial so long as the restrictions do not amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–36, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979). To determine whether detention is punitive in nature, a court must decide whether the restriction is imposed for the purpose of punishment or whether it is incident to a legitimate governmental purpose. *Id.* at 538, 99 S.Ct. at 1873; *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554–567, 568, 9 L.Ed.2d 644 (1963); *Hazzard.* If detention is rationally related to a legitimate governmental objective, it does not, without more, amount to punishment. *Bell, supra,* 441 U.S. at 539, 99 S.Ct. at 1874.

■ Here, defendant's detention is rationally related to the government's well-established interest in ensuring her appearance at trial and for service of sentence, if any. *Id.* at 534, 99 S.Ct. at 1871. The mere fact that detention resembles a traditional form of punishment, incarceration, does not make it punitive. There is no indication that the Act seeks to promote such recognized goals of punishment such as retribution, deterrence or rehabilitation. The procedural protections encompassed by the 1984 Act, *see* § 3142(f), when coupled with the requirements of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, are sufficient to ensure that the defendant's due process rights are compromised to the least extent practicable while still accommodating the government's interest in preventing flight before trial and protecting the safety of the community.

## 3. Conditions of release.

■ The Magistrate's findings are supported by the record. Defendant does not

challenge the finding that there is probable cause to believe she has committed a predicate offense. The effect is to invoke the presumption that no combination of conditions will assure appearance and safety.[2] None of the facts adduced rebuts the presumption.

The defendant is a citizen of Lebanon and lives in Beirut with her husband and daughter. (One son is a student in Armenian Russia and the other in Italy.) A brother, whose whereabouts are unknown, and a sister who lives in Pasadena are her only contacts with this country. There is nothing to indicate that she is or has been at all close to the sister, having not seen her in 15 years. The sister had no idea defendant was coming until the day before she arrived, suggesting that the trip was not planned and had been quickly arranged for something other than a familial purpose. She apparently has no significant assets, but a large amount of heroin was involved. The weight of the evidence against the defendant is substantial. None of the conditions which could be imposed under subsection (c), save for remaining in the custody of her sister, § 3142(c)(2)(A), is applicable to the profile presented by defendant. In view of the tenuousness of the tie, there is no reason to believe that the sister, merely because of her residence in Pasadena, could assure that defendant would stay and appear—or would not pose a danger to the community through a drug connection about which the sister may have no knowledge and over which she would have no control.[3] Finally, given the state of affairs in Lebanon, extradition would likely be impossible were defendant to flee. Therefore, considering the factors identified in subsection (g), the magistrate correctly concluded that there are no conditions which would reasonably assure the presence of the defendant.

Accordingly defendant's motion for bail pending trial is denied; and it is hereby ordered as follows:

1. Oussanna Robine Kouyoumdjian be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. She be afforded reasonable opportunity for private consultation with her counsel;

3. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Kouyoumdjian is confined deliver her to a United States marshal for the purpose of an appearance in connection with a court proceeding;

4. Medical care be provided as needed; and

5. Nothing said in this Order be construed as implicating, modifying or limiting the presumption of innocence.

**2.** Danger to the community may be inferred from drug trafficking activity as well as physical violence. *See* Senate Report at 39; *see also United States v. Hawkins,* 617 F.2d 59, 61 (5th Cir.), *cert. denied,* 449 U.S. 962, 101 S.Ct. 355, 66 L.Ed.2d 215 (1980).

**3.** Although defendant may have some health problems, there is no indication that she would be attended at all, let alone better, if released to the custody of her sister (who also appears to be *without significant* assets), than in custody where care is available.