UNITED STATES of America

v.

Muhammad ASKARI.

Crim. A. No. 85–44.

United States District Court,
E.D. Pennsylvania.

April 30, 1985.

Ronald A. Sarachan, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Maureen K. Rowley, Asst. Defender, Philadelphia, Pa., for Askari.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Presently before me is defendant Askari's motion for reduction of bail and the

government's motion to revoke bail and to order pretrial detention of defendant Askari under the Bail Reform Act of 1984, Pub.L. No. 98–473, title II, 98 Stat. 1837 (1984). I have considered the written submissions of the parties and the testimony, proffers, and arguments of counsel at the hearing held on April 19, 1985. I will grant the government's motion and order bail revoked and defendant Askari detained pending trial on May 28, 1985.

In granting the government's motion, I make the following findings of fact pursuant to 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

1. On February 14, 1985, defendant Muhammad Askari a/k/a John Marshall Henry was indicted and charged with possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Appendix I, Section 1202(a)(1).

2. On February 28, 1985, at defendant's initial appearance, the government moved for pretrial detention of defendant pursuant to Title 18, United States Code, Section 3142(f)(1)(D) on the grounds that defendant Askari is charged with a felony committed after he had been convicted of two prior crimes of violence: bank robbery and robbery. The government argued that there was no condition of release or combination of conditions which would reasonably assure the safety of any other person and the community.

3. At a detention hearing held on March 4, 1985, United States Magistrate Scuderi held that before he could order pretrial detention of a defendant he had to find that there was no condition or combination of conditions that would reasonably assure both the appearance of the person as required and the safety of any other person and the community. Judge Scuderi then held that the government had failed to show that defendant Askari posed a serious risk of flight and therefore denied the government's motion for detention. The court set bail at $75,000/10% cash.

4. On March 7, 1985, defendant filed a motion for reduction of bail. On March 12,

1985, the government filed a notice of appeal of the order denying its motion for detention.

5. I held a *de novo* hearing on April 19, 1985 at which both the government and defendant presented evidence through written documents, oral testimony and proffer.

6. Special Agent Forest G. Webb of the Federal Bureau of Investigation (FBI), Philadelphia, PA testified as a witness for the government at the April 19, 1985 hearing. Agent Webb testified from his knowledge of the FBI records pertaining to defendant Askari and from his involvement in the investigation leading up to the present indictment of defendant Askari. Based on his forthright nature and his years of experiences with the FBI, I find him to be a credible witness.

7. Defendant Askari has a lengthy criminal record which includes crimes of violence.

8. On May 13, 1974, defendant Askari committed an armed robbery at the Beneficial Mutual Savings Bank, 5535 Chester Avenue, Philadelphia, Pennsylvania. Government Exhibits 1 and 2 ("G——").

9. During the bank robbery, defendant Askari repeatedly threatened the lives of the people inside the bank. In addition to verbal threats, defendant's actions included holding a handgun on a bank guard, taking the guard's gun from its holster, giving the guard's gun to his accomplice, Rachael Williama Gilbert, and directing her to use it to cover the people in the bank while he confronted a teller and took $2,380.00.

10. Defendant Askari entered a guilty plea to two counts of bank robbery, in violation of Title 18, United States Code, Section 2113(a), including taking $2,380.00 from the Beneficial Mutual Savings Bank "by force and violence, and by intimidation." G1.

11. On July 18, 1974, defendant Askari was sentenced to five years imprisonment. Defendant was released from prison on March 1, 1979.

12. On February 13, 1980, defendant Askari was charged with an armed robbery at the Thrifty Food Store, Chester Avenue, Philadelphia, Pennsylvania.

13. During the robbery, defendant entered the grocery store with a shotgun and a bag, pointed the shotgun at the store owner, and ordered him to fill the bag with money. After the bag was filled, defendant took the bag, grabbed a woman and using her as a shield, backed out of the store.

14. On April 25, 1980, defendant Askari pleaded guilty and was convicted in the Common Pleas Court of Philadelphia, February Term 1980, Nos. 1581, 1585, of robbery and unlawfully carrying a firearm without a license, in violation of 18 Pa.C.S.A. §§ 3701, 6106. On July 9, 1980, defendant was sentenced to not less than five nor more than ten years imprisonment for the robbery conviction and five years probation on the firearms offense. G3.

15. On May 13, 1981, defendant's sentence was reduced to time served to 23 months on the robbery conviction and three years probation on the firearms conviction to run consecutively. Defendant's motion to reduce sentence was based on defendant having no prior convictions which was not true. G3.

16. On September 18, 1982, a complaint was filed charging defendant Askari a/k/a John Henry with theft by deception in violation of 18 Pa.C.S.A. § 3922. On January 26, 1984, defendant pleaded guilty in the Philadelphia Court of Common Pleas and was sentenced to time in (five months) to twelve months imprisonment. G7.

17. Defendant Askari was paroled on May 8, 1984 after paying $200 restitution. G7.

18. On October 23, 1983, defendant was stopped on Chester Avenue by Philadelphia Police Officer Joseph Tabasco who was investigating an armed robbery at a nearby bar. Defendant was allegedly found to have in his possession a Beretta 6.35 caliber pistol, Model 950B, bearing serial number G39315 with one live .25 caliber round in the chamber and five live .25 caliber rounds in the clip. Defendant was arrested and charged with possession of a firearm by a person convicted of a crime of violence, carrying a firearm without a license, and carrying a firearm on public streets, in violation of 18 Pa.C.S.A. §§ 6105, 6106 and 6108.

19. On October 23, 1983, defendant was on probation from his 1980 conviction for unlawfully carrying a firearm without a license, and he was on release pending trial for his charge of theft by deception.

20. The state prosecution of defendant Askari based on the October 23, 1983 incident was delayed by the failure of defendant to retain counsel, failure of counsel to be prepared and then by defendant's failure to appear. On May 10, 1984, the state charges were withdrawn. G4. Agent Webb testified that the state charges were withdrawn in favor of federal prosecution.

21. Defendant Askari was told, at the time the state charges were withdrawn, that he still faced federal charges. Defendant remained in the community and made no attempt to flee. After the present federal indictment came down, defendant Askari turned himself in.

22. Agent Webb was assigned the case to investigate sometime during the summer of 1984. He submitted a report in January 1985, and defendant Askari was indicted in February 1985.

## DISCUSSION

Before I make conclusions of law, defendant Askari has raised several legal arguments which I must first address.

In opposing the government's motion for pretrial detention under the Bail Reform Act of 1984, defendant contends that application of the Act to him violates the constitutional prohibition against ex post facto laws. The conduct for which defendant Askari is under indictment was committed on October 2, 1983; the Bail Reform Act was signed into law on October 12, 1984.

█ The prohibition against ex post facto laws applies to any laws which im-

pose "a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) or which alter substantial rights. *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925). There is no ex post facto violation "if the change is merely procedural, and does 'not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt'." *Weaver*, 450 U.S. at 29, n. 12, 101 S.Ct. at 964, n. 12, quoting *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). Therefore the key consideration is whether pretrial detention pursuant to the Bail Reform of 1984 is punitive in nature or merely procedural.

■ In *United States v. Miller*, 753 F.2d 19 (3d Cir.1985), the Third circuit held that the availability of bail pending appeal is a procedural issue rather than a type of punishment to which ex post facto applies. Similarly, I conclude that pretrial detention or bail pending trial is also a procedural issue rather than a type of punishment to which the ex post facto doctrine applies. As the court in *United States v. Payden*, 598 F.Supp. 1388, 1392 (S.D.N.Y.1984) noted, in passing the Bail Reform Act of 1984, Congress intended not "to promote the traditional aims of punishment such as retribution or deterrence, but rather ... to curtail reasonably predictable conduct, not to punish for prior acts." *quoting* S.Comm. on the Judiciary, Comprehensive Crime Control Act of 1983, S.Rep. No. 225, 98th Cong., 1st sess. 8 (1983). Congress sought to minimize the risk of flight and the danger to society posed by the release of criminal defendants. Therefore, pretrial detention is an incident of a governmental purpose other than punishment and as such is a constitutionally permissible, regulatory provision.

■ Defendant also argues that Judge Scuderi correctly denied the government's motion for pretrial detention on the grounds that the government had failed to establish both risk of flight by the defendant and danger to the community which could not be prevented by any condition or combination of conditions. The government moved for pretrial detention pursuant to section 3142(f)(1)(D) of the Act. Section 3142(f) states in pertinent part that the judicial officer must determine whether "any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required *and* the safety of any other person and the community ..." (emphasis added). Defendant Askari contends that this section must be read in the conjunctive and that the judicial officer must therefore find that there are no conditions or combination of conditions which will assure both the appearance of the person and the safety of the community. The government, on the other hand, argues that a disjunctive reading is more consistent with the legislative intent underlying the Bail Reform Act.

There has been no ruling of which I am aware in this circuit directly on point, but in *United States v. Delker*, 757 F.2d 1390 (3d Cir.1985), the Third Circuit implicitly accepted the government's disjunctive reading when it affirmed my holding that defendant Delker should be detained pretrial because the government had shown by clear and convincing evidence that no condition or combination of conditions would assure the safety of any other persons or the community. In *Delker*, I rejected the government's contention that there was a risk that defendant Delker might flee or fail to appear. *United States v. Delker*, Crim. No. 84–441, slip op. at 17 (E.D.Pa. December 10, 1984).

In *United States v. Kouyoumdjian*, 601 F.Supp. 1506 (C.D.Cal.1985), the court held that the government, in order to prevail on a motion for pretrial detention under the Act need not establish both risk of flight and danger to the community. As the court noted, "[t]o construe the statute ... by requiring findings on both appearance and safety before detention could be ordered, would defeat the overriding purpose of the Bail Reform legislation." *Kouyoumdjian*, 601 F.Supp. at 1510. Prior to

the 1984 Act, a court could only consider the risk of flight by the defendant. In passing the Act, Congress intended to permit courts to consider the additional factor of the danger to the community. Congress did not intend to increase the government's burden of proof, but rather intended to allow judges more flexibility in making detention decisions. *See* Report of the Committee on the Judiciary, United States Senate on S. 215, Rept No. 96–147 (May 25, 1983) at 32. Therefore, logic necessitates a disjunctive reading. This conclusion is reinforced by the fact that sections 3142(b) and (c) are written in the disjunctive, *e.g.*, "the judicial officer shall order the pretrial release ... unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required *or* will endanger the safety of any other person or the community." § 3142(b). *See also United States v. Bey*, Crim. No. 84–205, slip op. (N.D.Ohio 1985).

Finally, defendant contends that even if the statute is to be read in the disjunctive, the government has failed to meet its burden of proving by clear and convincing evidence that there is no condition or combination of conditions which will assure the safety of any other person or of the community; this burden of proof is set forth in section 3142(f). Under the new Act, before ordering pretrial detention, I must consider a number of factors, including: the nature of the offense charged and its circumstances, 18 U.S.C. § 3142(g)(1); the weight of the evidence against the defendant, § 3142(g)(2); the history and characteristics of the defendant, § 3142(g)(3); and the nature and seriousness of the threat to the community posed by the pretrial release of the defendant, § 3142(g)(4).

■ The government has filed its motion for pretrial detention pursuant to § 3142(f)(1)(D) which applies when a defendant is charged with a felony after having been convicted of two or more prior offenses described in paragraphs A through C. In this case, defendant Askari has twice before been convicted of armed robbery which constitutes a crime of vio-

lence as defined in 18 U.S.C. § 3156(a)(4)(A) and as described in § 3142(f)(1)(A). Defendant is now charged with another felony, namely, possession of a firearm by a convicted felon. I need not at this time consider the merits of the government's case against defendant, but I conclude that there is considerable evidence of the crime charged.

■ I have considered the evidence offered by the government and defendant Askari as to his personal characteristics, community ties, employment, record of appearance at other judicial proceedings, and financial resources. The defendant appears to be a long term resident of the Philadelphia area, his family resides in Philadelphia, and he has an offer of employment here. I note, however, that defendant has a lengthy criminal record which includes several convictions for violent crimes, and that a pattern has developed in defendant's behavior.

Considering the factors mandated under Section 3142(g), on balance I find that the factors weigh in favor of detaining Askari pending trial. I recognize that defendant has family and community ties and therefore I do not find that there is a strong likelihood that he would flee before the trial. I do, however, find him to be a danger to the community. At the time of the act alleged in the present indictment, defendant was out on probation for his 1980 conviction for carrying a firearm without a license and was on release pending trial for theft by deception.

Defendant contends that the sixteen-month delay between the date of the act with which defendant Askari is charged and the date the federal indictment was handed down defeats the government's contention that no condition or combination of conditions will assure the safety of the community. However, I do not believe that the government has dawdled in preparing this case for trial. Until May 10, 1984, the state prosecution continued. Shortly after the withdrawal of the state charges, the FBI commenced its investigation which continued until a report was filed in Janu-

ary 1985. An indictment was issued the next month. Therefore, I must reject defendant's position.

Under the Act, the government must demonstrate to my satisfaction by clear and convincing evidence that, if released pending trial defendant Askari would pose a threat to members of his community. I conclude that the government has met that burden with respect to defendant Askari. I therefore make the following conclusions of law.

### CONCLUSIONS OF LAW

1. The Bail Reform Act of 1984, 18 U.S.C. § 3142(e) expressly provides that the court shall order the detention of a defendant prior to trial if, after a hearing, the court finds "that no condition or combination of conditions will reasonably assure ... the safety of any other person and the community ...".

2. Under the Bail Reform Act, there must be a sufficient evidentiary basis for the court's determination that pretrial detention is necessary. In making my determination I am required to consider: (1) the nature and circumstances of the offense, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, appearance record, and whether at the time of the offense he was on probation, parole, or other type of release pending trial, sentencing or appeal; and (4) the nature and seriousness of any alleged danger to any person or the community that was posed by the defendant's release. 18 U.S.C. § 3142(g).

3. I find that there exists probable cause to believe that defendant Askari committed a felony after having been convicted twice of committing a "crime of violence" within the meaning of 18 U.S.C. § 3156(a)(4), and therefore, the government

is properly proceeding under § 3142(f)(1)(D).

4. The indictment charges defendant Askari with possession of a firearm by a convicted felon in violation of Title 18, United States Code, Appendix, Section 1202(a)(1). I find that the weight of the evidence against Askari is great. I also find the facts to be clear and convincing that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e) and (f).