**UNITED STATES of America, Plaintiff,**

v.

**Barry CASHIN, et al., Defendants.**

**Crim. A. No. 90–CR–20029–01–BC.**

United States District Court,
E.D. Michigan, N.D.

June 12, 1990.

Janet Parker, U.S. Atty., Bay City, Mich., for plaintiff.

Neil H. Fink, David A. Keolzer, Detroit, Mich., for defendants.

ROSEN, District Judge.

Before the Court is Defendant Barry Cashin's Motion for Revocation of Detention Order. In this motion, Cashin seeks his release pending trial. In support of the motion, Cashin attached the affidavits of N.C. Deday La Rene, his attorney in a previous criminal matter, Harold Cashin, his father, Bernice Cashin, his mother, Brian Cashin, his brother, and the affidavits of several acquaintances and family friends. Cashin has also attached and relies on the transcripts of his hearings in this case before federal Magistrate Donald Dietrich, of the Central District of Florida.

The motion came before the Court for hearing on June 7, 1990, at which time Cashin offered and the Court heard the testimony of Ms. Sara Becker, an employee of Michigan House Arrest Services, and the Defendant's mother, Ms. Bernice Cashin. Ms. Becker testified as to the use and efficacy of an electronic monitoring system (which the Court will refer to as an "electronic tether") for in-home detention of defendants pending trial, and Ms. Cashin testified as to her and her husband's willingness to put up the equity in their house, and their savings, as bond for their son's release, as well as their willingness to have

him in their home and monitor his conduct prior to trial.

The Court has considered all of these materials and testimony in reaching its decision, as well as the uncontested factual circumstances surrounding Cashin's arrest and the government's search of his residence which eventually led to his indictment. From these sources, the Court makes the following findings of fact.

FINDINGS OF FACT:

Defendant Barry Cashin was arrested in Florida on April 6, 1990 pursuant to a complaint and warrant authorized by Magistrate Charles Binder. Later that same day, Cashin appeared before Magistrate Donald Dietrich in Orlando, Florida for an initial appearance on the complaint. The Magistrate ordered at that hearing that Cashin be temporarily detained.

After an evidentiary hearing on April 9, 1990, Magistrate Dietrich ordered that Cashin continue to be detained and removed by federal officers to this district. The Magistrate made several alternative findings to support Cashin's pretrial detention. First, he found that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community." Second, he found that there is a serious risk that the defendant will flee. Third, the Magistrate found that there is a serious risk that the defendant will obstruct or will attempt to obstruct justice, or threaten, injure, or intimidate a prospective witness or juror.

Cashin was indicted on May 2, 1990 and charged with conspiracy for possession with intent to distribute marijuana, actual possession of over 14 pounds of marijuana, possession of 38 dosage units of LSD, and using a .357 handgun to facilitate the commission of a drug trafficking offense. These charges arose from a search of Cashin's residence at 712 Buchanan Street, Midland, Michigan, pursuant to a search warrant. At this residence, the officers conducting the search found over 14 pounds of marijuana, most of which was found behind a private bar in Cashin's basement. Also found behind the bar, in close proximity to the marijuana, were the .357 handgun, packaging materials, and a triple beam scale. The officers also discovered, in a safe in the basement, hidden behind a freezer, over $300,000 in cash. In addition, the officers found three rifles, two shotguns, and ammunition in the basement. The officers seized these materials as well as four motor vehicles located on the premises.

Search warrants were also executed on two storage facilities under Cashin's control. At one facility, in Midland, the officers found one Cadillac vehicle, one motorcycle, and "antiques." At the other storage facility, in Florida, officers found a 1978 Porsche vehicle.

According to the testimony presented at Cashin's hearings before Magistrate Dietrich, Cashin was on vacation with his girlfriend at the time of his arrest. His parents were also there, and Cashin had previously made arrangements with his parents to drive their new car back to Michigan for them, although Cashin had already purchased a return air ticket to Michigan.

At the hearing before this Court on June 7, 1990, Cashin's mother, Bernice Cashin, testified that the Defendant lived in his own house with his girlfriend. Bernice Cashin kept in contact with the Defendant as well as all of her children, seeing them usually once a week, usually at her house, not the Defendant's house. However, she further testified that she had last seen the Defendant in February, 1990. She testified that she was not aware that the Defendant had been dealing drugs, and she was not aware that he had been convicted in 1971 on a minor drug charge. She was aware, however, that the Defendant had been convicted in 1985 for conspiracy for possession of marijuana.

Although Bernice Cashin was not aware that her son, Defendant Barry Cashin, was dealing drugs, she did testify that he had not been gainfully employed for at least ten years, despite the fact that he is 42 years old. When asked by the government's attorney to explain how she supposed he managed to support himself and accumulate considerable wealth, she indi-

cated that she did not seek to find out; or perhaps did not want to know, such things. The Court believes, based upon her demeanor and testimony on the stand, that, although Bernice Cashin appeared sincere and credible, her either intentional or unconscious avoidance of knowledge of the Defendant's drug-related activities is consistent with the behavior of many parents whose children are engaged in activities (particularly drug-related) of which they do not approve.

The Court was impressed with the testimony of Sara Becker, who testified about her knowledge with respect to the electronic tethering system that Cashin proposes to use as a condition of his pretrial release. The electronic device is an ankle bracelet which communicates with a receiver kept in the subject's home. The receiver is connected to the subject's telephone. The subject must wear the bracelet at all times, and the bracelet will automatically communicate an emergency signal if it is tampered with or removed from the subject's body. If this happens, or if the subject travels farther than 50 to 100 feet from the receiver device, the receiver is programmed to cause the subject's telephone to transmit an immediate warning signal to whatever law enforcement officer is charged with supervising the Defendant's release. Becker testified that the tethering device can be programmed to monitor the bracelet and the subject's movements for such short intervals of time as every 30 seconds. Thus, if the subject attempts to remove the device or travel outside of the boundaries of his house arrest, an emergency signal will be sent to the supervising officer in no more than 30 seconds, depending upon how the device is programmed.

However, upon examination by the Court and cross-examination by the government's attorney, Ms. Becker disclosed that the device's communications with the supervising officer is transmitted through and, therefore, dependent upon the subject's telephone lines. When the telephone lines are tampered with, broken, or fail for some reason, the device will send another signal to the supervising officer, indicating the trouble. But, this signal might not be picked up by the home-based monitor for between 30 minutes and four hours, depending again on how the device is programmed. Thus, even under the most restrictive conditions, there is some chance that failure of the system will not be detected by law enforcement officers for at least 30 minutes, thus affording a significant time lapse to effect an escape.

Under normal operations, and assuming that no tampering with the telephone lines occurs, the supervising officer will be notified within 30 seconds of the subject's escape. However, the Court notes with concern that no testimony was offered as to how much time would be required for the supervisor to respond to an emergency signal. The Court believes that some further delay would be inevitable, and even the smallest delay would afford at least some opportunity for escape. Further, the Court notes that Ms. Becker testified to relatively limited experience with pretrial detention situations outside the Detroit metropolitan area, where the company and its monitor are based.

Considering Ms. Becker's testimony, the Court concludes that the tethering device might well provide some deterrence but could not prevent the Defendant's fleeing. Rather, the Court concludes that there is, at this time, too little experience with the system in situations like the present case for the Court to repose full confidence in it.

Cashin has offered, as conditions to his release pending trial, to subject himself to the restrictive electronic tethering device, to place himself in the custody of his parents at their home, and to post his parents' home as collateral to assure his appearance. Bernice Cashin testified that the home is worth approximately $40,000. She also testified that she would be willing to monitor the Defendant's activities and notify the responsible authorities if the Defendant violated the conditions of his release.

DISCUSSION:

Both parties agree that the Court must consider Cashin's right to release pending trial *de novo.* Both parties also agree that, because the charges pending against him

carry a possible maximum penalty of 10 or more years of imprisonment, there is a statutory rebuttable presumption in 18 U.S.C. Section 3142(e) that no conditions of release will reasonably assure his appearance and the safety of the community. The parties also agree that, once Cashin has presented some evidence to rebut this statutory presumption, the burden then shifts to the prosecution to persuade the Court, by a preponderance of the evidence, that no conditions of release can reasonably assure Cashin's appearance, and, by clear and convincing evidence, that no conditions of release can assure the safety of the community.

The parties differ, however, as to whether the government must persuade the Court as to both reasonable assurance of Cashin's appearance and reasonable assurance of safety to the community. The Court finds that the lack of reasonable assurance with respect *either* to Cashin's appearance, or to the safety of the community is sufficient to require continued detention pending trial under Section 3142(e) because this is the most reasonable interpretation of the statute as a whole. *United States v. Kouyoumdjian*, 601 F.Supp. 1506, 1509 (C.D.Cal.1985). *See also United States v. McConnell*, 842 F.2d 105, 110 (5th Cir.1988), *reh. den.*, 847 F.2d 840 (5th Cir. 1988); *United States v. Cole*, 715 F.Supp. 677, 679–680 (E.D.Pa.1988); *United States v. Resek*, 602 F.Supp. 1126, 1128–1129 n. 1 (S.D.N.Y.1985). This Court agrees with the *Kouyoumdjian* court that, since Section 3142(f)(2) places upon the judicial officer the duty to hold a hearing to determine whether pretrial detention is necessary based solely on the risk that the defendant will flee, it would be inconsistent for the Court to interpret Section 3142(e), as Cashin argues, in such a way as to allow his release even though no conditions of release can reasonably assure his appearance. *Id.* The Court also rejects Cashin's contention that the Supreme Court has held

that reasonable assurances must be absent with respect both to the defendant's appearance and the safety of the community in *United States v. Salerno*, 481 U.S. 739, 754, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987). In that case, the Supreme Court specifically held that Section 3142(e) was not unconstitutional as applied in that case even though bail was denied solely because the defendant in that case presented a threat to the community. *Id.*, 107 S.Ct., at 2103, 2105.[1]

In considering whether any conditions of release could reasonably assure Cashin's appearance and the safety of the community, Section 3142(g) directs the Court to consider various factors, including:

    1.  The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    2.  The weight of the evidence against the defendant;

    3.  The defendant's personal history and characteristics, including employment, local connections, and history of appearing at court proceedings;

    4.  Whether the offense was committed while on release, probation or parole for another offense; and

    5.  The nature and seriousness of the defendant's threat to the community if released.

The Court will therefore consider these factors, as well as the testimony offered with regard to the electronic tethering device and the Defendant's proposal to remain in the custody of his parents, as they relate to the instant case.

    1. *Nature and circumstances of the offense charged.* The offense charged here is both a serious offense, punishable with a maximum penalty of more than 10 years' imprisonment, and a drug offense, which Congress considered particularly dangerous in enacting the bail reform act. The Court cannot ignore that Cashin is charged with possession of more than 14

---

**1.** The Court notes that the interpretation of Section 3142 urged by the Defendant also strains common sense. If the government were required to show both elements (i.e., no reasonable assurance of appearance *and* lack of threat

to the community) in order to secure pretrial detention, conceivably a defendant could obtain release even though he posed no threat to the community but was likely to flee, or vice versa. *Resek*, 602 F.Supp., at 1129–1129 n. 1.

pounds of marijuana obviously intended for resale. The Court further cannot ignore the fact that Cashin is charged with the use of a deadly weapon, a .357 handgun, in connection with the drug offense. The Court rejects outright as implausible Cashin's contention that this weapon was used only for hunting; the government found the weapon behind the bar in the basement of Cashin's residence together with drug measuring and packaging devices, as well as in close proximity to the extraordinary quantities of marijuana and cash.

The offenses charged are clearly both serious and present an obvious danger to the community, including an immediate physical threat. Therefore, this first factor weighs heavily against Cashin's release.

2. *The Weight of the Evidence.* The government found a very large quantity of illegal drugs in Cashin's home, as well as paraphernalia associated with distributing the drugs for sale, and an extraordinary amount of cash—over $300,000. These materials are strongly persuasive evidence of the charge of possession with intent to distribute illegal drugs. The weapons charge is supported by the fact that the government found the weapon in close proximity to the drugs, cash and paraphernalia. Cashin does not presently suggest that any of this evidence would be inadmissible at trial. The second factor thus also weighs in favor of detention pending trial.

3. *The Defendant's personal characteristics.* The Defendant points out that he has always lived in the Midland, Michigan area, in close proximity to his closest family members. The defendant also does not appear to suffer from any obvious psychological conditions that would compel him to flee or present an unpredictable threat to the community.

However, upon closer examination, Cashin's community ties to the area are not significant. The only community tie that Cashin could identify to support his release is his desire to play softball with a local team. This tie is manifestly insufficient to prevent him from fleeing prosecution for an offense that carries the possible penalty of life imprisonment.

Cashin's past record is both good and bad. It appears that he was convicted of crimes on three separate occasions, dating back to 1971. In each case, Cashin was released pending trial, and in each case, he apparently made the required appearances. This is good.

However, the fact that Cashin was convicted twice before on drug charges, similar to, although less serious than, the present charges, demonstrates that he has recidivist tendencies, and strongly inclines this Court to conclude that no conditions of release can reasonably assure that he will not continue to engage in such activities while on release pending trial. If previous convictions are insufficient to deter Cashin from engaging in illegal drug trafficking, then the Court cannot conclude that releasing him into the custody of his parents, as requested, will deter him, as he awaits trial. Thus, although his past record may tend to demonstrate that Cashin is less likely to flee, at the same time it underscores that he constitutes a serious threat to the community. Further, the Court concludes that his parents' demonstrated past history of "looking the other way" with respect to Defendant's criminal activities and lifestyle provides no assurances to the Court that their presence in the home will deter Defendant from either further illegal activities or making plans to effectuate flight. The Court accordingly cannot conclude that Cashin's past record weighs either in favor or against pretrial release. The Court further notes that the probative value of Cashin's past record for appearing before the court is significantly tempered by the fact that the penalties his faces with the present indictment are far more serious than for his past convictions.

In the Court's view, a very serious obstacle to this Defendant's release pending trial is that he has no professional or financial ties to the community other than his illegal activities. The evidence before the Court shows that Cashin has always made his living dealing illegal drugs. He has not been gainfully employed for at least the past ten years. And, the living that he has made on drugs is lucrative, considering the

enormous amount of cash on hand in his home, and the various pieces of real property and automobiles he has been able to accumulate. The only financial incentive for this defendant not to flee is his continuing illegal drug trafficking enterprise. The Court is, of course, extremely reluctant to release Cashin on the premise that his lucrative illegal activities will keep him occupied in this area pending trial. To do so would be to turn a blind eye to the threat that Cashin will inevitably pose to the community if he is released under any conditions.

On balance, then, the personal history and characteristics of the Defendant do not weigh in favor of this Court finding that conditions can be imposed that might reasonably assure his appearance. Further, these same factors weigh heavily in favor of finding that no conditions of release can reasonably assure the safety of the community.

4. *Release on other crimes at the time of the offense.* It does not appear that Cashin was on probation, parole, or pretrial release with respect to another offense at the time of the present offense. Of course, the absence of this factor in no way rebuts the statutory presumption that no conditions of release can reasonably assure his appearance and the safety of the community. This factor can only weigh in favor of detention; its absence does not favor release.

5. *Nature of the threat posed to the community.* The Court agrees with the government that the strong possibility that Cashin will continue to engage in illegal drug trafficking presents a threat to the "safety of the community" sufficient to preclude pretrial release under Section 3142(e). To the Court, as to the legislature that enacted the Bail Reform Act, "safety of the community" does not include only freedom from physical harm. It also includes freedom from the known societal dangers posed by drug trafficking. That the legislature obviously considered drug

offenses particularly harmful to the community is apparent in the special provisions made in Section 3142 itself with respect to drug offenses.

In any event, the weapons found at Cashin's home amply demonstrate that he could pose a physical threat to the community as well.

In this case, the Court finds not only is the threat to the safety of the community great with respect to the degree of harm that may be caused by Cashin's criminal proclivities, the Court also finds that the probability is high that Cashin will continue to engage in drug trafficking if released pending trial, considering the ample financial rewards bestowed upon Cashin from such activities and his utter indisposition, at the age of 42, to engage in any legitimate gainful activity.

Thus the nature of Cashin's threat to the community strongly supports the conclusion that no conditions of release can reasonably assure the safety of the community. This conclusion is supported, also, by most of the factors outlined above. Altogether, the government has presented clear and convincing evidence that no conditions of release can reasonably assure the safety of the community. Cashin has accordingly failed to present sufficient evidence to rebut the statutory presumption in 18 U.S.C. Section 3142(e) that no conditions of release can reasonably assure the safety of the community. Thus, under Section 3142(e), on this basis alone, the Court is required to order Cashin's detention pending trial.

The Court does not rely on this factor alone, however. The court's weighing of the evidence also leads it to conclude that Cashin has failed to rebut the statutory presumption that no conditions of release can reasonably assure Cashin's appearance. The Court does believe that the electronic tethering device offered by the Defendant would make flight more difficult, but could not possibly eliminate his ability to escape.[2]

2. Cashin did not present any statistical evidence or testimony to demonstrate that the electronic tether device is any less likely to result in escape than release without such a device. In the ab-

sence of such evidence, the Court hesitates to assume that statistical evidence would demonstrate effectiveness. *See United States v. O'Brien,* 895 F.2d 810, 815–816 (1st Cir.1990).

If Cashin is strongly motivated to escape, he will escape. The Court agrees with the government that the nature of the penalties facing Cashin on the present charges (more than ten years imprisonment), his present age (42), the fact that conviction could result in the forfeiture of substantially all his property, and his lack of virtually any employment experience together provide at least a strong motivation on Cashin's part to avoid facing the present charges. This is especially true considering the strength of the government's case against him, as discussed above.

The additional conditions of release proposed by Cashin are still inadequate to rebut the statutory presumption. Cashin's parents, both because of their age, and because of their apparent past inability (or unwillingness) to detect Cashin's involvement with drugs, are not capable of preventing Cashin from escaping from their custody or from continuing to engage in drug trafficking while awaiting trial. The Court is convinced that Bernice Cashin is sincere in her present belief that she would report any violations of the conditions of Cashin's release, in the event she detected such violations, but her attentiveness cannot prevent his surreptitious escape. Further, the Court observed the relative physical condition of both the parents and the Defendant, and it is clear that they could not physically prevent his escape. Both parents are in their sixties and move somewhat slowly. The Court also notes, for the record, that Defendant Cashin's father has demonstrated in Court that he has difficulty hearing. In contrast, the Defendant is a very fit 42 years old, and the affidavits attached to his motion indicate that he has acted seasonally as a basketball referee for the last 14 years, and has played on championship softball teams.

The further condition of his release, that his parents post their residence as security, also is not sufficient to rebut the statutory presumption. Although this condition will place a heavy burden and risk on Cashin's parents, the Court cannot find that this condition will motivate Cashin not to escape, in light of the penalties he faces, and in light of the fact that the evidence seized by the government demonstrates Cashin's ability to raise vast amounts of cash through his illegal drug activities far in excess of the value of his parents' home.

## CONCLUSION

The Court concludes that no conditions or combination of conditions of release can reasonably assure either Cashin's appearance or the safety of the community. The Court therefore orders the Defendant's continued detention pending trial.

In *O'Brien,* relied upon by the Defendant here, the Court summarized the currently available statistical evidence:

> These figures indicate that about two and one half percent of those with the electronic bracelet have fled. The national figure for those who flee of all those released is three to four percent. While the magistrate found this to be a significant difference, we do not think that, given the low numbers involved, a statistically relevant difference can be claimed at this time, though anecdotally the evidence has some force. We agree however, that the fact that the number is lower at all is noteworthy: those released with a bracelet would typically include a higher number of persons posing a risk of flight than the general population of defendants because the bracelet would be used only where the defendant would otherwise be detained based on the risk of flight or danger to the community.
>
> We conclude that the evidence concerning the effectiveness of the bracelet alone only arguably rebuts the presumption of flight. *Id.*