UNITED STATES of America, Plaintiff-Appellee,

v.

Albert Samuel FORTNA, Jr., Defendant-Appellant.

No. 85–1403

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1985.

Jackson, Sorrels, Shapiro & Anton, Frank Jackson, Bruce Edward Anton, Dallas, Tex., for defendant-appellant.

Marvin Collins, U.S. Atty., Robert R. Smith, Jr., Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Albert Fortna, Jr. appeals to this Court, under 18 U.S.C. § 3145(c), 28 U.S.C. § 1291, and Fed.R.App.P. 9(a), from the order of the district court affirming Fortna's pretrial detention without bond under the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* We affirm.

## PROCEEDINGS BELOW

Fortna was among several individuals arrested without a warrant near the Dallas airport on April 23, 1985 on a complaint charging an ongoing conspiracy, in, among other places, the Dallas Division of the Northern District of Texas, to import 700 kilograms of cocaine into the United States from Colombia in violation of 21 U.S.C. § 963. He and the others were brought before a magistrate for the Dallas Division of the United States District Court for the Northern District of Texas on April 24, 1985.[1] The magistrate informed each defendant of the offense for which he had been arrested, read him the complaint and ascertained that he understood it. He also advised them of their rights. He ascertained that Fortna was not represented by counsel, but intended to retain counsel.[2] The magistrate advised that he was going to set a preliminary probable cause hearing on April 29, and then concluded by stating as follows:

"Now, the final matter that I want to go into here this morning is the matter of bond. In each of your cases I *am going to schedule the matter for a detention hearing. I will schedule the detention hearing on April the 29th, 1985,* at the conclusion [of] the preliminary hearing, and *at that time I will hear from you and your attorney* as to any facts and circumstances which *warrant your release on bond and the*

---

**1.** The record does not reflect the presence of anyone at this proceeding other than these defendants, the magistrate and the court reporter. The magistrate's subsequent order reflects that he had received "the Pretrial Services Report" on April 24.

**2.** None of the defendants were represented by counsel. Some indicated their inability to retain counsel.

*amount of bond* that you are capable of posting. I will also *hear from the Government* at that time concerning any reasons as to why the bond amount should be set higher than that which your counsel may recommend or *why bond should be denied* in your case.

"At the conclusion of the case of the hearing as to each of the defendants, I will either set a bond amount that you are financially capable of posting, *or if I find that the bond which you are capable of posting is either insufficient to insure that you will make all of your appearances* as you are ordered to appear or that such bond amount is insufficient to insure that you will not pose a danger to any other persons or to the community, *in either event I would find and order that you be detained in custody until this case is disposed of.*

"....

"... [A]nd at this time I will remand each of the defendants to the custody of the United States Marshal Service pending the hearing before me on April the 29th at 4 p.m." (Emphasis added.)

On April 29, the probable cause-detention hearing commenced before the magistrate, with Fortna and the other defendants present and represented by counsel. At the commencement of the hearing the magistrate announced:

"The purpose of the hearing here today is to conduct a preliminary hearing and also a detention hearing to determine whether or not any defendants in which cases there are found to be probable cause should be released on bond or detained, pending disposition of the case."

The hearing was conducted on April 29, April 30 and May 1. On April 30, the magistrate announced that he found "that there is probable cause to believe each of the defendants has committed the crime with which he is charged in the complaint that is before the Court." The hearing thereafter focused only on the other detention considerations, but the magistrate made it clear that the probable cause evidence was considered for this purpose also. At the conclusion of the hearing on May 1, the magistrate announced in open court that he would deny Fortna bond, and that his written reasons would follow.

Also on May 1, the grand jury for the Dallas Division, Northern District of Texas, returned a one-count indictment charging Fortna and the others with conspiracy, in that division and elsewhere, to import approximately 700 kilograms of cocaine into the United States from Colombia, in violation of 21 U.S.C. § 963. This charge was essentially the same as that in the complaint.

The magistrate filed his written findings and order on May 2, directing that Fortna be held without bond pending trial.[3] He found:

"[N]o clear and convincing evidence to establish that if released on bond the Defendant [Fortna] would pose a serious danger to the *physical* well-being of any person.

"However, it is clear from the evidence before the magistrate that the Defendant poses a serious *non-physical* danger to other persons and to the community. As noted above the Defendant is one of the major principals of an organization which has dealt in large quantities of cocaine and marihuana imported and intended to be imported into the United States. Based upon Fortna's own statements and those of his co-conspirator Harnage it is clear that this organization has well-placed sources in foreign countries for high-purity cocaine as well as marihuana. It is also clear that this organization has invested millions of dollars in this enterprise.... [T]he 700 kilograms of cocaine which were intended to be imported would have had a market value to major drug distributors located within the Unit-

---

**3.** The order directs that Fortna be confined "in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal, and that the Defendant shall be afforded reasonable opportunity for private consultation with his counsel."

ed States in excess of $32,000,000.00.... As noted above Fortna and Harnage had previously invested $1,700,000.00 in a marihuana deal which was thwarted by law enforcement officers.

" . . . .

"The evidence before the magistrate demonstrates that Fortna is the head of an organization whose principal enterprise is the illegal importation of controlled substances. As noted above, the conspiracy has taken significant, sophisticated efforts in an attempt to avoid [detection] or infiltration of the illegal scheme by law enforcement agencies. Further, even in those instances where seizure and arrests have impeded the overall scheme, Fortna and his associates have simply retrenched and redirected their efforts to continue importing illegal substances. Such evidence is clear and convincing and establishes that *were Fortna to be released on bond, no amount of amount will reasonably assure that Fortna will not continue illegal trafficking in massive quantities of controlled substances, including cocaine and marihuana.*" (Emphasis added.)

The magistrate's memorandum does not expressly speak, one way or the other, to whether any bond or other condition or combination of conditions would reasonably assure Fortna's appearance, nor does it acknowledge the absence of an express ruling on that matter.

On May 10, Fortna filed with the district court, pursuant to 18 U.S.C. § 3145(b), his motion "to revoke or amend" the magistrate's May 2 order, requested "a hearing de novo on this" and that the district court "grant this defendant reasonable bail."

The district court heard this motion on June 5. The court observed that it had read the entire record of the proceedings before the magistrate, but would hear further evidence if desired. Fortna's counsel introduced documentary evidence, principally concerning Fortna's net worth and investments in real estate, mostly in the area of Tampa, Florida where his home

was. When the hearing concluded that day, the district court took the matter under advisement.

On June 12, the grand jury for the Northern District of Texas, Dallas Division, returned a twenty-six-count superseding indictment against Fortna and the others. The first count charged Fortna and his co-defendants with essentially the same conspiracy to import cocaine as did the complaint and the superseded May 1 indictment, except this time the quantity was 1,000 kilograms. The remaining twenty-five counts alleged substantive offenses, and in fourteen of these counts Fortna was charged either with travel in interstate commerce to promote and thereafter promoting the cocaine conspiracy contrary to 18 U.S.C. § 1952 or using a communications facility to facilitate the cocaine conspiracy contrary to 21 U.S.C. § 843(b).

On June 14, the district court issued its memorandum ruling affirming Fortna's pretrial detention without bond. The ruling states that "the Court finds, as did the Magistrate, that Defendant poses a serious 'non-physical danger' to other persons and to the community." The court agreed with the magistrate that Fortna "was a principal actor in a sophisticated drug-dealing organization" and that if "released he would likely return to the illegal but lucrative business of drug dealing. Such dealing poses a substantial serious danger to the public's well being and certainly justifies his detention." The court continued by stating:

"In addition to affirming the Magistrate's finding, the Court would supplement it by holding that Defendant [Fortna] also poses a physical danger to persons in the community. Unquestionably, drug abuse does violence to one's physical being.

"Moreover, *the Court further finds that Defendant poses a serious risk of flight if released on bail.* There was strong evidence before the Magistrate . from which he could conclude that Defendant's foreign connections, persistent drug dealings, and rather substantial fi-

nancial backing would result in his leaving the country if released. Congress well considered the nature of illicit drug [conspiracies] and concluded it was unsurprising that no matter how high bail was set, the arrested drug smuggler who made bail never appeared in Court. Putting together enough financial assets to make bail simply translated into a cost of doing business. *See, United States v. Jessup,* 757 F.2d 378, 395 (1st Cir.1985). *The Court is convinced that no condition or combination of conditions would reasonably assure this Defendant's appearance at trial."* (Emphasis added.)

The court also ruled that the magistrate properly invoked the detention statute on his own motion.

## DISCUSSION

### Timeliness of Detention Motion

Fortna complains that "[t]he Government did not, nor did the judicial officer, at any time within five days of the arrest of this defendant move that bail be denied ...." We reject this contention. When Fortna was first brought before the magistrate, on April 24, the day following his arrest, the magistrate ordered that a detention hearing be held on April 29 to determine if Fortna should be detained and whether any bond would be "insufficient to insure that you will make all of your appearances." Fortna was then charged with a drug offense carrying a maximum sentence of ten years or more, and if there were probable cause to believe that he committed that offense a rebuttal presumption would arise "that no condition or combination of conditions will reasonably assure the appearance of the person as required ...." 18 U.S.C. § 3142(e). A detention hearing is authorized "upon the judicial officer's own motion" in a case "that involves—(A) a serious risk that the person will flee." 18 U.S.C. § 3142(f)(2).

■ These facts demonstrate that the present case is in a materially different posture than that recently before this

Court in *United States v. O'Shaughnessy,* 764 F.2d 1035 (5th Cir.1985). There the defendant was arrested on April 23 on a warrant providing for $75,000 bail, and was first brought before the magistrate on April 24, at which time the government moved to continue bail, which the magistrate thereupon set at $175,000. It was not until arraignment on April 29 that the government moved for pretrial detention, the hearing on which was then set for (and was later held on) May 1. This Court held that the absence of any request for a pretrial detention hearing on April 24, the defendant's first appearance before a judicial officer, prevented his detention on the grounds of dangerousness to prospective witnesses. In so holding, this Court specifically observed that "[t]he judicial officer did not move for pretrial detention on his own motion" and that "the Government moved to continue bail." At 1038. Neither condition is applicable here. In the present case, the magistrate, at the defendant's first appearance, on his own motion ordered a detention hearing to determine, *inter alia,* whether any bond would suffice to reasonably assure the defendant's appearance. These same circumstances likewise distinguish *United States v. Payden,* 759 F.2d 202 (2d Cir.1985), where the defendant was arraigned on October 17, and there was no mention of detention without bond until the government moved for such an order on October 31, the initial hearing on which was not held until two weeks later.

■ We observe that the defendant does not complain, and never has complained, that the detention *hearing* was not held on April 24. The Bail Reform Act provides that "[t]he hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance." 18 U.S.C. § 3142(f). However, the Act also provides that "[a]t the hearing, the person has the right to be represented by counsel ...." *Id.* When Fortna was first brought before a judicial officer, the magistrate had the right on his

own motion to direct that there be a detention hearing. *See* § 3142(f). But, since Fortna did not have counsel present and had not retained counsel but stated his intention to do so, it was impossible to legally hold the hearing at that time consistent with the Act's provision that the accused is entitled to counsel at the hearing. In these circumstances, we doubt that Congress intended to forbid pretrial detention that was otherwise warranted. Moreover, any error in this regard would appear to be harmless under the circumstances and not justify reversal. *Cf. United States v. Anderton*, 752 F.2d 1005 (5th Cir.1985) (violation of 18 U.S.C. § 3161(j)(1)). Fortna was advised at his first judicial appearance that there would be a hearing to determine if he would be detained without bond in order to assure his appearance. He had indicated that he wanted to retain counsel. The hearing was set for within five days, the maximum period for a continuance requested by the defendant (three days being the maximum for the government). *See* § 3142(f). At no time did Fortna or his subsequently retained counsel request an earlier hearing or object to the April 29 date. There is no indication that the April 29 date was suggested by or to convenience the United States Attorney.

**Reasonable Assurance of Appearance**

■ As previously observed, the district court found that "no condition or combination of conditions would reasonably assure this Defendant's appearance at trial." We think it clear that such a finding, if adequately supported, suffices to warrant pretrial detention without bond, without regard to whether the findings concerning the safety of other persons or the community are properly made or supported. The wording of the Act, particularly the first sentence of section 3142(e),[4] makes it evident that the lack of reasonable assurance

of *either* the defendant's appearance *or* the safety of others or the community is sufficient; both are not required. *United States v. Jessup*, 757 F.2d 378, 380, 388 (1st Cir.1985) (sustaining pretrial detention without bond on appearance ground alone); *United States v. Kouyoumdjian*, 601 F.Supp. 1506, 1508–10 (C.D.Cal.1985) (detailed analysis of statutory scheme and legislative history). *See also United States v. Freitas*, 602 F.Supp. 1283, 1287 (N.D.Cal. 1985).[5] We cannot believe that by the Act Congress intended to prevent detention even though bond, combined with any other conditions, would not reasonably assure appearance. *See Kouyoumdjian, supra.*

■ In the present case, the magistrate made no express finding as to reasonable assurance of appearance. However, the district court did. We hold that suffices. When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release. *See United States v. Freitas*, 602 F.Supp. at 1293. *Cf. United States v. Thibodeaux*, 663 F.2d 520, 522 (5th Cir.1981) (same under prior law). Moreover, the rule of *de novo* determination by the district court applies not only when the accused challenges the magistrate's order, but also when the government does, as it is authorized to do by section 3145(a)(1). *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir.1985) (relying on our *Thibodeaux* opinion). In such a situation, the district court, making an independent determination, can order pretrial detention even though the magistrate has refused to do so. *Delker, supra.* That being the case, we see no reason why the district court, having had the magistrate's ruling properly brought

---

**4.** This sentence reads:

"**(e) Detention.**—If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial."

**5.** This question was expressly left open in *United States v. Orta*, 760 F.2d 887, 891 n. 19 (8th Cir.1985).

before it, cannot support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it "as unfettered as it would be if the district court were considering whether to amend its own action." *Thibodeaux*, 663 F.2d at 527.[6]

## Standards for Determination and Appellate Review

■ *Appellate Review.* However, when we review the district court's order, whether it be the initial detention order or one issued in response to a motion to revoke or amend under section 3145(a) or (b), our scope of review is limited, and the order is to be sustained "if it is supported by the proceedings below." *United States v. Jessup*, 757 F.2d at 387–88. *Cf. United States v. Golding*, 742 F.2d 840, 841 (5th Cir.1984) (same standard under prior law). We recognize that an independent standard of appellate court review was applied in *Delker*, 757 F.2d at 1399–1400. Nevertheless, we believe that the *Jessup* "supported by the proceedings below" standard is more appropriate to our role as an appellate court and is more in keeping with our precedents, such as *Golding*.

■ *Initial Determination.* Our resolution of whether the finding concerning reasonable assurance of appearance is supported by the proceedings below, must be made in light of the standards Congress has provided in the Act. We note to begin with our agreement with the holding in *United States v. Orta*, 760 F.2d 887, 890–92 (8th Cir.1985), that the standard is *reasonably assure* appearance, not "guarantee" appearance, and that detention can be ordered on this ground only if "no condition or combination of conditions will reasonably assure the appearance." § 3142(e).

With respect to the quantum or character of proof, we observe that the Act provides that "[t]he facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure *the safety* of any other person and the community shall be supported by clear and convincing evidence." § 3142(f) (emphasis added). *No* comparable provision is made respecting the reasonably assure appearance determination. Accordingly, we hold that the judicial officer making the latter determination should apply the simple preponderance standard. That is to say, to order detention on this ground the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance. *See Orta*, 760 F.2d at 891; *Freitas*, 602 F.Supp. at 1293, 1295; *Kouyoumdjian*, 601 F.Supp. at 1509. In our review, we are called upon to decide whether that determination by the judicial officer is "supported by the proceedings below." What can the judicial officer consider in making his determination in this regard? We make three observations here.

■ First, the Act expressly provides that "[t]he rules concerning admissibility of *evidence* in criminal trials do not apply to the presentation and *consideration* of *information* at the hearing." § 3142(f) (emphasis added). This implies that the judicial officer can rely on matters brought out at the hearing which would not be considered as "evidence" under traditional trial standards. Hence, merely because the information adduced at the hearing may be hearsay of the kind that would be inadmissible at a trial, does not necessarily mean that such information cannot form the basis for a pretrial detention determination. *See Delker*, 757 F.2d at 1396–98; *United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir.1985); *Freitas*, 602 F.Supp. at 1292.

---

**6.** We do not suggest, of course, that the district court may modify the detention or release terms

actually ordered by the magistrate in a manner

*See also* Fed.R.Evid. 1101(d)(3) [7]; *Golding,* 742 F.2d at 842 (prior law); *United States v. Montemayor,* 666 F.2d 235, 237 (5th Cir.1982) (prior law).

Second, section 3142(e) provides for the following presumption:

> "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) of title 18 of the United States Code."

 We note initially our agreement with *Delker,* 757 F.2d at 1396–97, that, consistent with the principle previously discussed, hearsay or other information not qualifying as admissible trial evidence is not necessarily an improper basis for making the "probable cause" determination which is the necessary predicate of the above provided for presumption. As to the nature of the presumption itself, we agree with *Jessup,* 757 F.2d at 380–84, that if there is evidence tending to rebut the presumption it does not shift the burden of persuasion, but nevertheless *remains in the case and is a factor to be considered* by the judicial officer, at least with respect to the

reasonable assurance of appearance of one charged with a listed serious drug offense. *Jessup* correctly points to the legislative history of the Act indicating that Congress considered that in the circumstances that trigger the section 3142(e) presumption a "*'strong probability arises* that no form of conditional release will be adequate.'" *Id.* at 382 (citing, with emphasis added, S.Rep. No. 225, 98th Cong., 1st Sess. 19, *reprinted in* 1984 U.S.Code Cong. & Ad. News 22). We likewise agree with *Jessup*'s observation that:

> "Congress investigated a general problem, the problem of drug offenders and flight. After hearing evidence, Congress concluded that 'flight to avoid prosecution is particularly high among persons charged with major drug offenses.' S.Rep., *supra,* at 20, U.S.Code Cong. & Admin.News 1984, p. 23. It found that 'drug traffickers often have established ties outside the United States ... [and] have both the resources and foreign contacts to escape to other countries....' *Id.* Congress then wrote its drug offender/flight presumption. These facts suggest that Congress intended magistrates and judges, who typically focus only upon the particular cases before them, to take account of the more general facts that Congress found. In order to 'rebut' the presumption, the defendant must produce some evidence; and the magistrate or judge should then still keep in mind the fact that Congress has found that offenders, as a general rule, pose *special* risks of flight....
>
> " . . . .

unfavorable to the accused in the absence of an appeal by the government.

**7.** Rule 1101(d) provides in relevant part: "The rules (other than with respect to privileges) do not apply in the following situations: ... (3) Miscellaneous proceedings.... [P]roceedings with respect to release on bail or otherwise."

Section 3142(f)(2) provides that the judicial officer is to consider, among other things, "the weight of the evidence against the person." In this connection, we deem pertinent the following Advisory Committee comments (respecting similar provisions in prior law) to Fed.R.Evid. 1101(d)(3), viz:

> "The references to the weight of the evidence against the accused, in Rule 46(a)(1), (c) of the Federal Rules of Criminal Procedure and in 18 U.S.C.A. § 3146(b), as a factor to be considered, clearly do not have in view evidence introduced at a hearing under the rules of evidence."

We do not consider in this regard the effect of section 3142(f)'s provision respecting "clear and convincing evidence," as that applies only to the "safety" determination, which we do not address here. *Acevedo-Ramos,* however, holds that hearsay may be relied on for the "safety" finding in a proper case.

" ... The drug offender/flight presumption seems a reasonable response to this general problem, requiring that a charged drug offender produce some evidence that he does not present a special risk and then requiring the magistrate to review the matter with Congress's general findings in mind." *Id.* at 384–86 (emphasis in original).

Finally, we note that section 3142(g) directs the judicial officer to "take into account" the following:

"(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

"(2) the weight of the evidence against the person;

"(3) the history and characteristics of the person, including—

"(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

"(B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

"(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release...."

**The Present Record Showing**

With the above standards in mind, we conclude that the proceedings below support the district court's determination that, more probably than not, no condition or combination of conditions would reasonably assure Fortna's appearance at trial.

 The predicate finding for the section 3142(e) presumption, namely, probable cause to believe that Fortna committed one of the listed drug offenses for which the maximum sentence was ten years or more, is adequately supported. The court had before it the affidavit of FBI Special Agent Evans as to information he received from undercover FBI Agent Martin, who had infiltrated the conspiracy, and had personally met with the various conspirators, including Fortna, on several occasions, and engaged in discussions and concrete plans for carrying out the cocaine importation conspiracy. Martin was going to furnish the conspirators with an airplane for the importation, the previously arranged plane having "fallen through." There was also the testimony of Agent Evans himself, who was one of several officers involved in surveilling the conspirators and acted in ongoing cooperation with Martin. He testified to what Martin had reported to him from time to time during the course of the investigation, his own observations during surveillance, conversations between Martin and certain conspirators which Evans personally overheard, conversations of the conspirators which were taped by Martin and later listened to by Evans, and many other matters, including Evans' removal of two kilograms of cocaine from the car of one of the conspirators. It was also shown that when Fortna was arrested in a hotel near the Dallas airport, where he had registered under another name, he had $38,000 in currency in his briefcase. No useful purpose would be served by detailing all of the information brought out at the hearing. Suffice it to say that we consider the record amply sufficient to support the determination that there was probable cause to believe that Fortna was guilty of conspiring to illegally import massive amounts of cocaine, worth in the neighborhood of $30,000,000, from Colombia, South America, that the conspiracy was a highly sophisticated one and involved contacts with South American sources and flight to and return from Colombia with the cocaine, that Fortna had long engaged in illegal drug importation and that he was the head of a sophisticated organization whose principal enterprise is the illegal importation of controlled substances. There was no significant information before the magistrate

or district court tending to contradict any of the foregoing.[8]

Fortna was shown to live near Tampa, Florida, where he had resided for some thirty years, and to have family ties in that area, including his wife, parents and sisters. He had no children. He was also shown to have substantial investments in real estate, and it was indicated that real estate investment was his principal business.[9] There was evidence he had a net worth of $3,000,000 to $4,000,000.[10] While he had one or two old arrests, he had no previous convictions. There was no showing of past violence on his part. He had indicated that he is an occasional user of marihuana and had experimented with cocaine use.

■ Fortna asserts that his personal circumstances, family and community ties belie the finding that detention is necessary to reasonably assure his appearance. We determine, however, that the district court could fairly conclude otherwise based on this record. As we have noted, the predicate for the section 3142(e) presumption was established, and the district court properly relied on it.[11] Fortna contends that this is simply the equivalent of saying that any drug offender subject to a ten-year sentence will be detained. We disagree. Considering "the nature and circumstances of the offense," we note the essentially unrebutted showing that massive amounts of cocaine, and vast sums of money, were involved, along with substantial foreign contacts and the ability to clandestinely fly to South America, and that Fortna was the head of this sophisticated enterprise and

had been engaged in other significant illicit drug trafficking and importation.

### CONCLUSION

Being unable to conclude that Fortna's substantial rights have been prejudiced or that his pretrial detention is not supported by the proceedings below, we affirm.

AFFIRMED.

---

8. There were three very general character reference letters, and testimony from Fortna's father, aged 68, the latter primarily relating to Fortna's finances. So far as Fortna's illegal activities were concerned, his father merely indicated he was unaware of any such, without any indication that he would likely have been aware had such activities taken place.

9. He also operated a construction company from which he had a weekly income of approximately $500. He had operated a motorcycle sales enterprise with his father.

10. It was never clearly explained how Fortna (who did not graduate from high school) had managed to amass so large a fortune since he started in business (with his father) in 1969.

11. The transcript of the hearing before the district court clearly reflects that the court did not view the presumption as shifting the burden of persuasion. It properly applied it in the manner indicated by *Jessup*.