UNITED STATES of America

v.

**Juan IBARRA, John Joe Guerrero, and Robert Franklin Chambers.**

**Crim. No. H–91–97.**

United States District Court,
S.D. Texas,
Houston Division.

July 16, 1991.

Bertram A. Isaacs, U.S. Atty's. Office, Narcotics Div., Houston, Tex., for U.S.

Michael DeGuerin, Houston, Tex., for Juan Ibarra.

Lewis Dickson, Houston, Tex., for Robert Franklin Chambers.

Robert Scardino, Houston, Tex., for John Joe Guerrero.

## ORDER OF CONTINUED PRE-TRIAL DETENTION

KENT, District Judge.

Before the Court are Defendant Ibarra's Motion to Amend the Detention Order, (Instr. # 7), Defendant Guerrero's Motion for Bond Reconsideration, (Instr. # 10), and Defendant Chambers' Motion to Revoke the Magistrate's Detention Order and for Release Upon the Combination of Reasonable Conditions, (Instr. # 5). The Court has considered these Motions jointly, for purposes of this Order, but individually as respects the merits of each, and for the reasons hereinbelow set out, each of said Motions is DENIED.

## BACKGROUND

Pursuant to the terms of 18 U.S.C. § 3142, a preliminary and detention hearing was held before the Hon. Calvin Botley, United States Magistrate–Judge, on May 28, 1991, in Houston, Texas. After a hearing lasting almost six hours, Magistrate–Judge Botley determined that the Defendants had successfully rebutted the presumption that they constituted a risk of flight, but found that they had failed to rebut the statutory presumption that they constituted a danger to the community, pursuant to 18 U.S.C. §3142(e) and (f).[1] On that basis, Magistrate–Judge Botley determined that no condition or combination of pre-trial release conditions would ameliorate such danger to the community, and denied bail, in his Order of Detention Pending Trial, which was entered on May 30, 1991.[2]

---

1. The Magistrate–Judge's Order did not specify its application to any particular count, of course, because no Indictment had yet been issued.

2. The Magistrate–Judge also specified condi-

Subsequent to the entry of such Order, these Defendants have individually and collectively moved for reconsideration of the Magistrate–Judge's Order of Detention on a variety of factual and legal bases, and have requested this Court to conduct such review *de novo*, pursuant to 18 U.S.C. § 3145(b). Therefore, notwithstanding any prior findings by the Magistrate–Judge, as this Court herein acts *de novo*, it is entitled to make an independent determination as to proper pre-trial detention or proper conditions for release, if any. *U.S. v. Fortna*, 769 F.2d 243, 249 (5th Cir.1985).

## BOND GENERALLY

18 U.S.C. § 3141(a) provides for the authority of this Court to consider bond issues. Under 18 U.S.C. § 3142(a), the Court must establish terms of any pre-trial release, and under 18 U.S.C. § 3142(c)(3), this Court may amend release terms, if any, as from time to time required. Similarly, if pursuant to 18 U.S.C. § 3142(a)(4), the Court determines that detention, rather than pretrial release is appropriate, it is mandated to adhere to the provisions of 18 U.S.C. § 3142(e) and (f).

The standard required in the Fifth Circuit, regarding consideration of pre-trial release, is that conditions must be set that "reasonably assure appearance, not 'guarantee' appearance, and that detention can be ordered on this ground only if 'no condition or combination of conditions reasonably assure the appearance.'" *U.S. v. Fortna*, 769 F.2d 243, 250 (5th Cir.1985), citing *U.S. v. Orta*, 760 F.2d 887, 890–92 (8th Cir.1985). This is of course consistent with the presumption of innocence, in each Defendant's behalf, and with Constitutional guarantees against the establishment of excessive or unreasonable bail. U.S. Const. amend. VIII. On the other hand, the Court must juxtapose its serious and legitimate concerns in such regard with current statutory enactments.

■ The Indictment in this cause, (Instr. # 1), asserts three counts. Count One alleges violations of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A) and 846. Count Two alleges violations of 18 U.S.C. § 1956(a)(1)(A)(i) and § 2. Count Three alleges violations of 18 U.S.C. § 1956(a)(1)(A)(i) and § 371. 18 U.S.C. § 3142(e) and (f) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required and the safety of any other person in the community, where "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act ...". 18 U.S.C. § 3142(e), 18 U.S.C. § 3142(f)(1)(C). Consequently, while such presumption does *not* apply, as regards Count Two or Count Three, pertaining to any of the three Defendants, such rebuttable presumption does exist as a matter of law, as regards Count One, pertaining to each of said Defendants.

■ Notwithstanding such distinction, and as regards each count, pertaining to each Defendant, this Court must consider four factors in determining conditions of release, if any, or the justification for pretrial detention: (1) the nature and circumstances of the offenses charged, especially if narcotics are involved; (2) the weight of the evidence against each Defendant; (3) the history and characteristics of each Defendant, in a number of specified particulars; and, (4) the nature and seriousness of the danger to any person or to the community, regarding the contemplated pre-trial release of any Defendant. 18 U.S.C. § 3142(g).

■ The burden of persuasion always remains with the Government in a criminal case, and as noted, this Court seeks to scrupulously observe the presumption of innocence, and Constitutional guarantees of reasonable bail; but, by virtue of such statutory scheme, these Defendants must, as regards Count One, rebut the aforestated presumption with regard to both risk of flight, and risk of danger to any person or to the community. As regards

tions of detention, specifically including reasonable access of Defendants to counsel, for purposes of preparing their defense, and certain

other conditions, which this Court has not been asked to review, but will nevertheless herein reiterate.

Counts Two and Three, the burden of proof pertaining to each "risk" diverges. As no rebuttable presumption pertains to these counts, in this Court's view, the burden of persuasion remains with the Government to demonstrate by "clear and convincing evidence" that any of these Defendants constitutes a risk to any person or to the community, if released pending trial. 18 U.S.C. § 3142(f). However, the Government must prove risk of flight merely by a preponderance of the evidence, establishing that "it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *U.S. v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985), *citing U.S. v. Orta,* 760 F.2d 887, 891 (8th Cir.1985).

### RECORD CONSIDERED

With the standard of proof thus established, and the burdens properly placed upon the respective parties as regards the pending motions, the Court now turns to a discussion and brief analysis of applicable portions of the record under consideration. In this regard, the Court expressly notes that it has considered, for purposes of this Order, the complete 203 page transcript of the entire proceedings conducted before Magistrate–Judge Botley, during the preliminary and detention hearing, conducted on May 28, 1991, in Houston, Texas. The Court has also considered the entire 50 page transcript of a motion hearing also held before the Magistrate–Judge, on June 3, 1991, in Houston, Texas, although only limited portions of such proceeding address the issue of pre-trial detention. The Court has further considered the stated motions of each Defendant seeking re-consideration of the Magistrate–Judge's Detention Order, the existing Indictment, all affidavits on file in the cause, and Pre–Trial Services' reports, as regards each Defendant. In addition, the Court has considered all witness testimony and the evidence summaries and arguments of counsel offered at the hearing conducted by this Court as regards the pending motions, on July 11, 1991, in Galveston, Texas, (although the contents of such were largely redundant of the stated materials), as well as all documentary evidence submitted to the Court on such date, and admitted into the record of that proceeding.

### FINDINGS OF FACT

On the basis of that entire record, *de novo,* the Court makes the following factual FINDINGS:

■ (1) While this Court expressly defers any ruling, in this particular regard, pending the appropriate filing of motions, thus encouraging briefing and arguments from all concerned parties, in due course, this Court acknowledges defense counsels' orally stated concerns that portions of the evidence to be admitted in any trial of this case *may* be subject to suppression. Nevertheless, and in the present absence of any Motions to Suppress, this Court must assume the admissibility of all evidence proffered to date, and considers the four specified factors mandated by 18 U.S.C. § 3142(g) on that basis.

(2) Notwithstanding the theoretical evidence concerns stated in Finding No. 1, the Court further finds that probable cause existed for Magistrate–Judge Botley to bind these Defendants over for trial, and that probable cause was further sufficiently found to exist by the Grand Jury, to indict Defendants on each of the stated three counts. Conviction as regards Counts One and Two would likely result in substantial periods of incarceration, and for relevant purposes, specifically as regards Count One, would result in a likely term of imprisonment well in excess of ten years.

(3) The evidence as proffered and the total record considered by the Court, for instant purposes, allegedly indicates that these Defendants had in their possession or control documents indicating an extremely substantial cocaine business, involving almost one thousand kilograms of cocaine, and literally millions of dollars. The records seized involved a criminal transaction transpiring over at least five months, from early January, 1991, through May 21, 1991, and the arresting authorities seized weapons, almost one million dollars in cash,

a money counting machine, rubber bands and a number of items indicating the substantial handling of funds, and numerous tally sheets and related papers, from several sources, constituting allegedly sophisticated drug transaction records.

Defendant Ibarra had on his physical possession, at the time of arrest, a portion of other seized records, indicating a transfer of some 300 kilograms of cocaine, during the month of May, 1991, alone. He also had a paper bearing code "No. 36", which is alleged to be associated with the personal telephone number of Defendant Guerrero, and allegedly indicates a transfer to him of one or two kilograms of cocaine during the month of May, 1991.

Defendant Chambers was found in the house where the almost one million dollars was seized, as well as the money counting machine, and his latent fingerprint was found on the money counting machine. A weapon was found in a bed where Mr. Chambers may have been sleeping, and in a room where his clothes were stored. Defendant Chambers has indicated that he had been staying in this house for two weeks, at the invitation of a friend, but he could not offer any information as to who owned the house, or even who the friend was, who had extended him this hospitality.

Defendants Ibarra and Guerrero were observed throughout the day of May 21, 1991, allegedly engaging in behavior which gave a clear indication to a surveillance team that they were attempting to avoid being pursued, and were engaged in "suspicious activities". These included numerous "heat runs", or erratic driving patterns calculated to discover or to throw off surveillance efforts, as well as extremely erratic driving, weaving in and out of traffic at high speeds, numerous u-turns, and other somewhat unusual behavior.

Defendant Ibarra initially disclaimed any knowledge of any of the materials seized, but then later contradicted this representation, by stating that the records he had in his possession at the time of arrest had been taken from a car he initially disclaimed any knowledge of. The Defendants had been seen entering and exiting the houses where the money and related materials were seized. Defendants Guerrero and Chambers had, respectively, $900.00 and over $1,000.00 in their possession at the time of arrest, although both contended at the detention hearings conducted in this case that they live in extremely modest circumstances. Indeed, both filed affidavits of indigency at the commencement of this case. A gun was found in the automobile in which both Defendant Ibarra and Defendant Guerrero had been driving on May 21, 1991, and Defendant Guerrero volunteered the existence of such weapon to police when stopped. Consequently, it would appear that the statutory infractions alleged clearly involved a narcotic drug, to wit cocaine.

The weight of the evidence against each of the Defendants is not overwhelming, but when considered as a whole, it reasonably indicates to this Court that Defendants Ibarra and Guerrero were involved in bizarre driving activities on May 21, 1991, while under surveillance. They moved between houses at which almost one million dollars in cash, a money counting machine, various items of equipment related to the counting and storing of money, and money and drug tally sheets and weapons were found. They were driving in an automobile that contained a loaded semi-automatic pistol. Defendant Ibarra had in his possession documents which allegedly implicated both himself and Defendant Guerrero in the transfer of cocaine. They have been physically connected to the house where Defendant Chambers was arrested, and where the various items discussed were seized, including another semi-automatic pistol. Consequently, there appears to be enough evidence to at least get to the jury on the issue of guilt or innocence, as regards each count, and pertaining to each of the three Defendants. This Court must therefore view this as an extremely serious criminal transaction, involving possible terms of substantial incarceration.

(4) As regards this Court's evaluation of the history and characteristics of each of the Defendants, pursuant to 18 U.S.C. § 3142(g)(3), the information is, at best,

vague. Particularly as regards Count One, pertaining to each of the three Defendants, this Court notes the statutory creation of the rebuttable presumption that these Defendants pose a risk of flight, and a risk of danger to the community if released pending trial. It is this Court's considered view that none of the three Defendants has succeeded in rebutting such presumption in either regard.

(5) Defendant Ibarra presented evidence through his brother, Marcelena Ibarra, who appears to be a sincere, hardworking, thirty-four year old American citizen. They were raised together, and Marcelena Ibarra presently works for Cameron County, near Brownsville, Texas, in a supervisory capacity. He and Defendant Ibarra, who is eleven months younger, began working together at the age of seven or eight, shining shoes, washing cars, and doing a number of other menial jobs. There were seven children in the family, and they both helped the family financially. Since that time, he testified that Defendant Ibarra has been virtually continuously engaged in a number of jobs, although Defendant Ibarra moved from the Brownsville area about seven years ago, to the Houston area, where he has lived in at least three addresses, including an apartment, a mobile home, and his current address in LaPorte. This Court does not doubt the sincerity of Mr. Ibarra's testimony, and appreciates his obvious concern for his brother's well-being. Unfortunately, this Court does not find Marcelena Ibarra's testimony to be substantially probative, on the issue of minimizing either risk of flight or danger to the community, in Defendant Ibarra's regard. Marcelena Ibarra could not give Defendant's current street address. He was very vague on even the general location of the house where his brother now lives, and was extremely vague on the location of his prior residences. He conceded a relatively superficial relationship, over the last seven years, and rather minimal personal and social contact between the two. He attempted to testify, as best he could, regarding certain aspects of his brother's financial dealings and business obligations, but was able to shed very little light in this regard.

Defendant Ibarra's wife apparently works in a hospital in the Pasadena, Texas, area, and his children are apparently enrolled in school there. A picture of his family was introduced into evidence, and they are indeed a handsome group. Unfortunately, this does not add any substantive information upon which the Court may evaluate Defendant Ibarra, for purposes of 18 U.S.C. § 3142(g)(3).

Defendant Ibarra, as is his right, declined to be interviewed by Pre–Trial Services. A check of his records indicates two minor criminal infractions, both rather dated. However, this Court is significantly concerned that he has had a history of substantial movement in the Houston area, and that very little testimony has been offered that he has been legitimately gainfully employed in the Houston area, beyond rather vague representations that he buys and sells cars, and apparently supplements his income in this way, which is unsupported by tax returns or any documentation whatsoever. Moreover, none of these business activities explain why he would have in his possession records alleged to indicate massive drug transactions, and none of these activities explain his erratic driving on the date in question, movement between houses containing the stated seized items, and movement about the Houston area in an automobile containing a loaded semi-automatic weapon.

(6) Defendant Guerrero did agree to be interviewed by Pre–Trial Services, and information in his regard is slightly more complete. He is approximately age forty, and has lived in and around the Houston area most of his life. He has family in this area. He graduated from high school, and has some junior college education. His wife has a long history of stable employment, and he has three children, of relatively tender age. He has worked for long periods of time, in the glass installation business, but his recent employment history has been somewhat sketchy. He had suffered an on-the-job injury, and had been vaguely employed for the last several months prior to arrest.

He admits to both marijuana and cocaine use, although he denies the abuse of either substance. He was convicted of possession of a controlled substance, to wit cocaine, in 1976, which was subsequently dismissed pursuant to "deferred adjudication" procedures then existing under Texas State law. However, it is noted that his probation was revoked at least once, as regards such offense, and he was required to serve penitentiary time. He received a misdemeanor conviction in 1980 for assault, and was again convicted in 1982 for unauthorized use of a motor vehicle, for which he again served penitentiary time. The Court does note that he apparently kept all of his Court dates, as regards each of these offenses, and was allowed to voluntarily surrender, as regards the third offense. However, the Court equally notes that these transactions involved relatively minimal periods of incarceration.

Defendant Guerrero exited a vehicle on May 21, 1991, in which a loaded, semi-automatic pistol was found, which he implied may have been his, and about which he certainly had actual knowledge. Defendant Ibarra had in his possession an alleged drug record which indicated a "No. 36", next to which was listed Defendant Guerrero's personal telephone number, indicating his involvement in a recent transaction involving one or two kilograms of cocaine.

(7) Defendant Chambers also declined, as is his right, to be interviewed by Pre–Trial Services. However, a review of his records does reveal some information, and testimony was also offered in his behalf by his brother James Chambers. The Court found James Chambers to be polite, very concerned for his brother's well-being, and completely sincere. James Chambers is forty-nine years of age, living in Celeste, Texas. He and his family are buying a home, near Dallas, in the area where he grew up. His retired parents live in Kentucky, although they lived in the Dallas area for about thirty-five years. He has had a career in aircraft maintenance, and a long history of gainful employment. He served in the United States Military.

James Chambers testified that Defendant Chambers has been married for nineteen years. Defendant Chambers lives in Laguna Park, Texas, near Waco, approximately 100 to 130 miles away from James Chambers. He and his wife are raising her daughter, who is Defendant Chambers' step-child. The daughter is employed as a bank teller and goes to college. They live in a modest two bedroom "lake" house, which cost approximately $39,000.00. They pay a $340.00 per month house note. James Chambers sees his brother two to three times a month, and they talk more often by telephone. Defendant Chambers' wife works very hard, having several jobs, in a number of unique occupations. Defendant was released from jail in about 1985, and worked as a mechanic with a trucking company. He left because he could not get a raise, and since 1987, has allegedly been involved in a small construction business, and in the maintenance of various properties, although these allegations are unsupported by any tax records or other business documents, of any kind. He has also assisted in the construction of a "second" home for his parents in Honeygrove, Texas, where he hurt his back in 1990.

Defendant Chambers also owns another small house, valued at approximately $25,-000.00, which has been financed. Defendant Chambers and his wife own some old cars, and a motorcycle, which have minimal value. His wife has an IRA account, the value of which is unstated, and no other significant assets. James Chambers testified that Defendant has previously answered all of his court dates, and feels sure that Defendant would be a reliable risk in this case, as regards returning for trial, etc. Defendant's wife, his brother and his parents have all indicated a willingness to post security as regards his pre-trial release. James Chambers testified that his brother enjoys good mental and physical health, and has no stated alcohol or drug problems. He denies that his brother is a violent person.

However, to the contrary, Defendant Chambers has a long history of infractions of the law, dating back to 1961. During his younger years, between 1961–1968, he

was convicted of a number of petty offenses, mostly involving speeding, drinking beer, and the like. However, he was also incarcerated during that period for almost three years, for reasons not clear in his offered records. Moreover, of much more importance to this Court, Mr. Chambers had a 1981 conviction for possession with intent to distribute two hundred pounds of marijuana, which resulted in two years' imprisonment.

Defendant Chambers' latent finger print was found on a money counting machine, accompanied by almost one million dollars in cash, and he had well over $1,000.00 in his possession at the time of arrest, although he contended at the two detention hearings that he is a man of very modest means. He was arrested in a house containing a loaded, semi-automatic pistol, the money, the money counting machine, and related equipment. This particularly concerns the Court, in view of his long criminal history, and prior conviction for narcotics trafficking.

(8) This case is presently firmly set for trial on August 26, 1991, six weeks away. Counsel for each Defendant has expressed a desire to have each Defendant released, for purposes of making that Defendant available to assist in the preparation of his own respective defense. However, in ordering continued detention, this Court will herewith ensure reasonable access between each of the Defendants and his respective counsel, to allow maximum efficiency of trial preparations.

## CONCLUSIONS OF LAW

On the basis of the foregoing findings, the Court makes the following CONCLUSIONS:

■ (1) The Court has considered in addition to factual testimony, a number of records and other materials which have been offered by general summary, which would clearly be proscribed under applicable hearsay rules at the actual trial of this case. Nevertheless, the Court considers all of this information to be competent for the instant purpose of considering the three Defendants' respective motions. *U.S. v. Fortna,* 769 F.2d 243, 250–51 (5th Cir. 1985); *U.S. v. Delker,* 757 F.2d 1390, 1396–98 (3rd Cir.1985); *U.S. v. Acevedo–Ramos,* 755 F.2d 203 (1st Cir.1985); *U.S. v. Golding,* 742 F.2d 840, 842 (5th Cir.1984); *U.S. v. Montemayor,* 666 F.2d 235, 237 (5th Cir.1982).

(2) In enacting 18 U.S.C. § 3142(e) and (f), "Congress considered that in the circumstances that trigger the § 3142(e) presumption a 'strong probability arises that no form of conditional release will be adequate'." *Fortna,* 769 F.2d at 251, *citing U.S. v. Jessup,* 757 F.2d 378, 382 (1st Cir. 1985). The Fifth Circuit has expressly acknowledged Congress' conclusion, as regards the creation of such statutory rebuttable presumption,[3] that "flight to avoid prosecution is particularly high among persons charged with major drug offenses ...", and that indeed, such alleged drug offenders pose a "special risk of flight". *Fortna,* 769 F.2d at 251, *citing Jessup,* 757 F.2d at 384–86. This Court is particularly concerned, as regards Count One, and as pertains to each of the Defendants, that this alleged transaction or series of transactions involved a massive amount of cocaine and enormous sums of money. This would tend to indicate that these Defendants may be connected to an extremely sophisticated, well financed and well connected drug operation, with likely international ties. In addition, the Court specifically notes that Defendant Chambers' brother, James Chambers, who testified in both detention hearings, has access to corporate jets with international itineraries, and Defendant Chambers has a passport, although he presently declines knowledge of its present whereabouts.

---

**3.** 18 U.S.C. § 3142(e) provides, in relevant part, the following presumption: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq) ..."

Moreover, each Defendant argues a bond of $50,000.00, with only a $1,000.00–$5,000.00 cash deposit, which this Court feels would be wholly inadequate to ensure the appearance of any of the Defendants at trial. Given the proximity of the trial date, now only six weeks away, this Court is firmly convinced that continued detention of these Defendants, as regards Count One, does not constitute Constitutionally proscribed preventive detention, as argued by counsel. Rather, it avoids presenting each of the Defendants with a temptation, relative to the potential risk of long term incarceration, which might be beyond the reasonable abilities of any Defendant to withstand. On the basis of all of the evidence presented as above described, and in consideration of all four factors mandated by 18 U.S.C. § 3142(g), this Court concludes that no condition, or combination of conditions, will reasonably ensure that any of the three Defendants would not pose an unreasonable risk of flight or danger to the community, if released. Indeed, this Court frankly perceives that the likelihood of flight is extreme with each of the three Defendants, and this Court feels that the opportunity presented to each to re-engage in drug transactions on this magnitude would constitute a manifest danger to the community.

■ Defendants have failed to rebut the statutorily created rebuttable presumption, as regards both factors, and as regards Count One, and this Court concludes that pre-trial detention on either basis is fully justified. Counsels' argument that the family ties of these Defendants would meaningfully prohibit flight is not persuasive. Indeed, this Court has had two recent experiences with similarly charged individuals who appeared in Court with numerous family members, all willing to post security, each offering effusive promises of cooperation, and each offering the posting of a relatively substantial bond, backed by significant family properties. In *both* instances, the Defendants fled shortly before trial.

These three Defendants have an enormous incentive to flee, considering the incarceration periods they face, if convicted; and if connected to the operation alleged, they have the clear ability to do so. Notwithstanding the good faith representations of their family members who testified, and the sincere and vigorous arguments of counsel, the Court concludes that each Defendant has failed to rebut the presumption that each Defendant presents an unreasonable risk of flight.

While this Court has before it virtually no evidence that any of the three Defendants would constitute an unreasonable risk of harm to any individual person in the community, the Court, as stated, sincerely feels that a drug transaction of this magnitude constitutes a manifest danger to the community. The likelihood that these individuals would reengage in such alleged activities, if for no other purpose than to generate necessary funds to continue their defense, or to provide for the well-being of their families while possibly facing incarceration, would constitute a manifest danger to the community. The Court concludes that each Defendant has failed to rebut the statutory presumption, in this regard as well.

■ (3) As regards Counts Two and Three, and as pertains to each Defendant, the Court concludes, on the basis of the evidence as it now appears to exist, that the Government has carried its burden of demonstrating by clear and convincing evidence that each Defendant constitutes a risk of danger to the community, in the global sense above discussed, if released pending trial. The Court further concludes that the Government has sustained its burden of proof by a preponderance, that each of the Defendants poses an unreasonable risk of flight, and that no condition or combination of conditions could be established by this Court to reasonably ensure the attendance of each Defendant to answer prosecution at trial.

## CONCLUSION

Based upon the foregoing discussion, and the stated findings of fact and conclusions of law, it is hereby

ORDERED, ADJUDGED and DE-CREED that Magistrate–Judge Botley's Order of Detention Pending Trial, entered on May 30, 1991, as regards each Defendant, is hereby VACATED, and each Defendant is hereby ORDERED DETAINED, without bond pending trial in Galveston, Texas, which is now set for August 26, 1991. It is further

ORDERED, ADJUDGED and DE-CREED that each of the Defendants' Motions, as pertains to the Magistrate–Judge's Order, is hereby DENIED. It is further

ORDERED, ADJUDGED and DE-CREED that each of the Defendants shall remain in the custody of the Attorney General, for confinement in a correction facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. It is the express understanding of this Court that Defendants remain incarcerated in the jail facilities of Galveston County, and absent any subsequent motion by the Defendants to be transferred, Defendants are hereby ORDERED to remain in the custody of such facility pending trial. It is further

ORDERED, ADJUDGED and DE-CREED that each of said Defendants shall be made available by the person in charge of the correction facility where each is presently housed, to the United States Marshal, or his designated Deputies, for purposes of transportation to and from any appearances required by this Court, and such person in charge of said correction facility shall make each of said Defendants available at all reasonable times for communication with their respective counsel as regards preparation for trial. The Clerk of Court is hereby directed to tender copies of this Order to counsel for the United States, counsel for each of the stated Defendants, to the United States Marshal, and to the United States Pre–Trial Services officer.