**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**May 26, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

AGUSTIN MUNOZ,

    Defendant - Appellant.

No. 22-2047
(D.C. No. 2:22-MJ-00121-SMV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

Agustin Munoz appeals the district court's pretrial detention order. Exercising

jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, we affirm.

I.    **BACKGROUND & PROCEDURAL HISTORY**

    A.    **Munoz's Connections to Drug Smuggling from Mexico**

Munoz is an American citizen who was born and raised in Texas. In the latter

half of 2021, at about the age of twenty, Munoz lived with his father and another

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

woman in Ciudad Juárez, Mexico.  This woman may have been Munoz's aunt, but the record is ambiguous on that point.  Regardless, he knew she was a cross-border drug supplier, and that fentanyl was among the drugs she supplied.

Toward the end of 2021, Munoz's father was arrested in Mexico, and Munoz returned to Texas to live with his grandmother.  In January 2022, however, the woman he had been living with in Mexico called him and asked if he would transport drugs for her.  He agreed.  On January 20 or thereabouts, Munoz and his cousin successfully delivered an unknown quantity of illegal drugs from Ciudad Juárez to Santa Fe, New Mexico.  They then returned to Ciudad Juárez.

### B.    Munoz's Arrest

On January 27, 2022, Munoz and his cousin crossed from Ciudad Juárez into the United States with another load of illegal drugs in their pickup truck, again headed for Santa Fe.  Border crossing records show this was the eighty-first time Munoz had entered the United States from Mexico over the preceding twelve months.

Munoz and his cousin soon encountered a border patrol checkpoint on I-25 in Las Cruces.  Munoz, the driver, consented to inspection, and border patrol agents discovered an aftermarket compartment built into the vehicle's center console.  Inside the compartment they found Munoz's illegal cargo, specifically, eight bundles wrapped in electrical tape.  The contents of one of the bundles field-tested positive for methamphetamine.  Another bundle contained numerous pills marked "M30" that the agents suspected to contain fentanyl, and the agents presumed that the remaining

2

bundles likewise contained fentanyl pills, but they did not inspect them because handling fentanyl can be dangerous.

The agents informed Munoz of his *Miranda* rights, which he acknowledged and agreed to waive. Munoz then confessed the details described above about his time in Mexico and his drug-transportation activities. When asked about the contents of the bundles discovered in his truck, he responded, "[T]hey say M30, they are fentanyl, I think." Aplt. App. vol. 1 at 19 (internal quotation marks omitted).

### C. The Criminal Complaint

The government arrested Munoz and his cousin and filed separate criminal complaints against them. The criminal complaint against Munoz, dated January 31, charged "knowing[] and intentional[] possess[ion] with the intent to distribute approximately .66 kilograms (gross weight) of Methamphetamine and 10.23 kilograms (gross weight) of Fentanyl," in violation of 21 U.S.C. § 841(a)(1). *Id.* at 6.

Munoz waived a preliminary hearing and grand-jury presentment for seventy-five days, to facilitate plea-bargaining.

### D. The Pretrial Services Report

Ahead of Munoz's detention hearing, a probation officer prepared a pretrial services report. Highlights of the report included:

- An erratic employment and residence history over the previous three years.

- He was unemployed at the time of his arrest.

- He has no criminal record.

The probation officer recommended granting pretrial release on a $5,000 secured bond, with Munoz's sister acting as third-party custodian. But Munoz would live at his mother's home in Brownfield, Texas, which is next door to his sister's.

### E.    The Detention Hearing Before the Magistrate Judge

The magistrate judge held a detention hearing on February 3. Through counsel, Munoz urged the magistrate judge to follow the pretrial services recommendation. He also emphasized that the government had yet to test any of the pills recovered from Munoz's truck, so it was not clear whether the fentanyl charge had a solid basis. The government responded that Munoz effectively conceded probable cause on the fentanyl charge (and the methamphetamine charge) when he waived the preliminary hearing, so the court should treat the complaint's allegations accordingly.

The magistrate judge stated he could not resolve any dispute over the presence or amount of fentanyl, but there appeared to be no dispute that agents recovered 0.66 kilograms of methamphetamine, as the complaint alleged. Because 0.66 kilograms is more than 500 grams (*i.e.*, 0.5 kilograms), Munoz was still accused of "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A); *see also* 21 U.S.C. § 841(b)(1)(A)(viii) (specifying that the punishment for possessing "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine" is ten years to life). Thus, he remained under a statutory presumption "that no

condition or combination of conditions [would] reasonably assure [his] appearance . . . and the safety of the community." 18 U.S.C. § 3142(e)(3).

Regarding that presumption, Munoz argued that nothing but his recent residence in Mexico gave the court any reason to think he might flee, and that should not be enough by itself. The magistrate judge ruled, however, that Munoz had not rebutted the presumption. The magistrate judge further ruled that he should be detained due to the weight of the evidence against him; the likely length of incarceration if convicted; his lack of stable employment, residence, and financially responsible sureties; and his significant family and other ties outside the United States.

## F.    The District Court's Review

Munoz requested that the district court review the magistrate judge's decision. *See* 18 U.S.C. § 3145(b). Ahead of the review hearing, the government submitted a brief stating that it had weighed the pills and other substances recovered from Munoz's truck, and the final gross weight was 5.34 kilograms of fentanyl, 3.85 kilograms of cocaine, and 0.66 kilograms of methamphetamine.

At the hearing, Munoz pointed out that, according to the government's documents, the 5.34 kilograms of fentanyl was merely the weight of the pills suspected to contain fentanyl, and that the government still had not confirmed the presence of fentanyl. Munoz again emphasized his lack of criminal history, and he urged the court to accept the pretrial services recommendation and release him into his sister's custody on a $5,000 secured bond.

On that latter point, the government responded, among other things, that Munoz's sister was only twenty-two or twenty-three years old. Munoz's counsel replied with his understanding that the sister was twenty-three or twenty-four years old.

The district court began its ruling by stating that it "respect[ed] [Munoz's] concern that it simply isn't clear at this point what the charge is or what the facts will support in terms of the charge." Aplt. App. vol. 1 at 43. "But," it continued,

> on the basis of the potential charge, the really significant, almost staggering amounts of fentanyl, cocaine, and methamphetamine and Mr. Munoz's numerous trips across the border in the last 12 months, he has got all kinds of interest in and an ability to indulge in any interest that he might have in fleeing, so I am going to find that he is a flight risk.

*Id.* The court further found that, "given the potential [drug quantities alleged], I am going to find that he is a danger to the community as well." *Id.*

This appeal followed.

## II.    STANDARD OF REVIEW

"[W]e accept the district court's findings of historical fact . . . unless they are clearly erroneous." *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003). We review de novo the district court's application of those facts to the law governing pretrial detention. *Id.*

## III.    ANALYSIS

The Bail Reform Act requires pretrial detention "[i]f, after a hearing . . . , [a] judicial officer finds that no condition or combination of conditions will reasonably

assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *Cisneros*, 328 F.3d at 616 (citations omitted).

As noted above, the district court found—and Munoz concedes—that this case falls within the Bail Reform Act's presumption that he be detained due to the seriousness of at least the methamphetamine charge. Thus, Munoz was required to produce "some evidence" that his appearance could be assured and that he would not be a danger to the community. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

Munoz says he met this burden by pointing to the information in the pretrial services report about "his youth, clean record, and economic, social, and family stability." Aplt. Mem. on Review of Detention Order ("Aplt. Mem.") at 14. The magistrate judge ruled, however, that Munoz had not carried his burden. But the district court's review was de novo, *see Cisneros*, 328 F.3d at 616 n.1, and the district court did not say whether it reached the same conclusion as the magistrate judge on this issue. Under the circumstances, we will presume the district court found that at least something within the pretrial services report satisfied Munoz's relatively light burden, *see Stricklin*, 932 F.2d at 1355 ("The defendant's burden of production is not heavy . . . ."), and we will review the detention decision accordingly.

7

When contemplating detention, the district court must consider "available information concerning":

>    (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;
>
>    (2) the weight of the evidence against the person;
>
>    (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . . ; and
>
>    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).  Also, "the [statutory] presumption [of detention, given the seriousness of the offense] remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F.2d at 1355.

On the first two factors (nature and circumstances of the offense, and weight of the evidence), we reach the same conclusion as the district court.  Although some uncertainty exists about the fentanyl quantity, Munoz's confession and the amount of methamphetamine discovered in his truck show that the government has a strong case for proving a serious controlled substance offense—one for which the *minimum* sentence is ten years.  *See* 21 U.S.C. § 841(b)(1)(A).

On the third factor (Munoz's history and characteristics), Munoz again points to the pretrial services report's information about his youth, lack of a criminal record,

8

and supposedly stable social situation. We agree that his lack of a criminal record weighs in his favor (although Munoz admitted he transported drugs at least once before he was caught). Even so, the pretrial services report never said that his youth likewise weighs in his favor, nor did it say that he enjoys a stable social situation. It shows, rather, that he is currently unemployed and his employment and residence history have been erratic. The record further shows that Munoz previously lived in Mexico, and he crossed the border eighty-one times in the twelve months before his arrest—all tending to suggest an ability and incentive to flee the United States if released pending trial.

On the fourth factor (the danger Munoz might pose if released), Munoz says the government offered no evidence. We disagree. The circumstances that led to Munoz's arrest show his willingness to make up for his unemployment through drug trafficking, which is a community danger. *See United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (noting Congress's intent that community safety is concerned with more than "danger of physical violence," and "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community" (internal quotation marks omitted)).

That said, we need not reach any conclusion about Munoz's danger to the community. Unmanageable flight risk, if shown by a preponderance of the evidence, is enough to justify detention. *See United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) ("[L]ack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient [to justify pretrial detention];

9

both are not required."). Having thoroughly examined the record, we agree with the district court that the preponderance of the evidence establishes a flight risk.

According to Munoz, however, the district court "did not properly consider . . . whether there are conditions of release that could assure [his] appearance." Aplt. Mem. at 12. The district court ruled that "no condition or combination of conditions will assure the Defendant's appearance in court." Aplt. App. vol. 1 at 25. We recognize, however, that the district court said nothing specifically about the proposal that Munoz post a $5,000 bond and live with his mother, although in the custody of a sister next door (who is between two and four years older than him). The court nonetheless stated that it read the pretrial services report, which proposed this arrangement. *See id.* at 30. The parties also argued about the proposal at the detention hearing. The district court's finding that "no condition or combination of conditions will assure the Defendant's appearance in court," *id.* at 25, necessarily implies it rejected the proposal and we see no fault in its lack of further explanation, given the strength of the flight-risk evidence and the proposal's unusual nature.[1]

We accordingly hold that the government carried its burden to show by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure [Munoz's] appearance," 18 U.S.C. § 3142(e)(1).

---

[1] To the extent Munoz means to argue that the district court should have *sua sponte* considered different arrangements (*i.e.*, ones no party had proposed), he cites no authority that the statute requires as much.

## IV.    CONCLUSION

We affirm the district court's detention order.  We also grant Munoz's unopposed motion to seal volume two of his appendix, which contains the pretrial services report.  In this order and judgment, we have limited our discussion of the pretrial services report to information that is also contained in unsealed documents.

Entered for the Court
Per Curiam